Filed 7/31/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>        Petitioners,<br><br>        v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>        Respondent;<br><br>PRIME HEALTHCARE LA PALMA, LLC, et al.,<br><br>        Real Parties in Interest. | B272284<br><br>(Los Angeles County Super. Ct. No. BS158615) |

        ORIGINAL PROCEEDINGS in mandate.  Jane L. Johnson, Judge.  Petition granted to direct that judgment be vacated for lack of jurisdiction.

        Manatt, Phelps & Phillips, Gregory N. Pimstone and Joanna S. McCallum for Petitioners.

        No appearance for Respondent.

King & Spalding, Marcia Augsburger and W. Scott Cameron for Real Parties in Interest.

_____

## INTRODUCTION

Prime Healthcare La Palma, LLC and affiliated hospitals (collectively, Prime)[1] sued Kaiser Foundation Health Plan, Inc. (Kaiser)[2] in superior court under California law, alleging that Kaiser failed to reimburse Prime for emergency medical services Prime provided to Kaiser members. A portion of Prime's claims relate to emergency medical services Prime provided to enrollees in a Medicare Advantage plan administered by Kaiser pursuant to Part C of the Medicare Act (42 U.S.C. § 1395w-21 et seq.) (the Medicare Advantage claims).

After a rather convoluted multi-year path, the parties agreed to arbitration in lieu of the superior court litigation. After

_____

[1] The other hospitals in the group are Alvarado Hospital, LLC; Prime Healthcare Centinela, LLC; Veritas Health Services, Inc.; Desert Valley Hospital, Inc.; Prime Healthcare Services–Garden Grove, LLC; Prime Healthcare Paradise Valley, LLC; Prime Healthcare Services–San Dimas, LLC; Prime Healthcare Anaheim, LLC; Prime Healthcare Services-Encino, LLC; Prime Healthcare Huntington Beach, LLC; Prime Healthcare Services–Montclair, LLC; and Prime Healthcare Services-Sherman Oaks, LLC. Each of these hospitals was, at relevant times, owned and operated by Prime Healthcare, Inc. or an affiliated entity.

[2] Two other Kaiser entities were named as defendants: Kaiser Foundation Hospitals and Southern California Permanente Medical Group.

Prime filed an arbitration demand, Kaiser moved in the arbitration proceedings to dismiss Prime's Medicare Advantage claims on the ground that they are preempted by the Medicare Act and subject to that Act's requirement that claimants exhaust administrative remedies before resorting to litigation or arbitration. The arbitration panel denied Kaiser's motion and memorialized its ruling in what it labeled as a "Partial Final Award Re Medicare Advantage Claims" (the partial final award). Kaiser petitioned the trial court to vacate the award. The court denied the petition and entered a judgment confirming the award. The case is before us on Kaiser's appeal from that judgment. Kaiser contends that the panel's ruling on the Medicare Act preemption and exhaustion issues memorialized in the partial final award was wrong as a matter of law and that the court thus erred in entering a judgment confirming the award. Prime defends the legal basis of the rulings by the panel and the court on those issues.

Prior to oral argument, we asked the parties to address whether the judgment was appealable, and, if not, whether we could review the judgment by treating Kaiser's appeal as a petition for writ of mandate. At oral argument and in supplemental briefs, Kaiser and Prime joined forces and answered yes to both questions. We have concluded otherwise, however. The merits of the confirmation of the panel's award on the Medicare Act preemption and exhaustion issues are not reviewable, either by appeal or by writ.

Code of Civil Procedure[3] section 1294, subdivision (d) (section 1294(d)), authorizes appeals from judgments confirming arbitration awards. To be appealable under section 1294(d), however, a judgment confirming an arbitration award must be final—that is, it must embody a final determination of the parties' rights, just like an appealable judgment in a civil case that did not go to arbitration (§§ 577, 904, 1287.4). The judgment confirming the partial final award here does not meet that standard. The judgment is final only as to the determination that the Medicare Advantage claims are neither preempted by the Medicare Act nor subject to exhaustion under that Act. It resolved nothing more than that. Whether Kaiser is liable to Prime on the Medicare Advantage claims remains to be resolved in the arbitration and then in subsequent proceedings in the trial court. The same is true of all of Prime's other claims (the Medicare Advantage claims constitute just one piece of Prime's claims), as well as cross-claims that Kaiser has submitted to arbitration. Because the judgment is not a final judgment, it is nonappealable.

Our ability to review by writ the merits of the judgment confirming the partial final award on the Medicare Act preemption and exhaustion issues depends on whether the trial court had jurisdiction to confirm the award in the first place. The court lacked jurisdiction if the "award" did not meet the section 1283.4 standards for an award. To qualify under section 1283.4, an award must "include a determination of all the questions submitted to the arbitrators the decision of which is necessary in

---

[3]     All undesignated statutory references are to the Code of Civil Procedure.

4

order to determine the controversy" (§ 1283.4). Based on the reasoning of our decision in *Judge v. Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619 (*Judge*), the partial final award the court confirmed fails to satisfy that requirement because it determined only the questions of Medicare Act preemption and exhaustion. It left unresolved all of the other questions the arbitrators will have to decide in order to determine the parties' controversy. Because the "award" is not an award, we cannot review by writ the merits of the confirmation of the panel's Medicare Act preemption and exhaustion rulings.

We are, however, treating Kaiser's appeal as a petition for writ of mandate for the purpose of directing the trial court to vacate its judgment confirming the partial final award and enter a new order dismissing Kaiser's petition to vacate the award. We do so on the ground that the failure of the partial final award to qualify as an "award" under section 1283.4 deprived the court of jurisdiction to confirm or vacate it.

Parties generally have broad leeway to structure an arbitration as they see fit, free from statutory constraints. They may, for example, conduct the arbitration in phases and ask the arbitrators, as Kaiser and Prime did here, to issue phase-specific, interim awards. Parties' requests for judicial approval or disapproval of arbitration awards are, however, subject to statutory constraints that limit when and under what circumstances courts may review arbitrators' rulings. Those restrictions deprive trial courts of jurisdiction to review an award that does not qualify as an award under section 1283.4, and appellate courts of jurisdiction to review on appeal a judgment that does not qualify as a final judgment under section 1294(d).

5

The request of Kaiser and Prime for judicial intervention into their arbitration at this stage founders on these shoals.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The State Court Litigation*

In January 2008, Prime filed five separate state court actions against Kaiser in different counties throughout California.  Prime's claims arose from its provision of emergency medical services to Kaiser members, including to enrollees in Kaiser's Medicare Advantage plan.[4]

---

[4]    By way of background, Congress established the Medicare Advantage program in 1997 as Part C of the Medicare Act.  (42 U.S.C. §§ 1395w-21 – 1395w-29.)  Unlike Medicare Parts A and B, the Medicare Advantage program allows Medicare enrollees to receive Medicare benefits through private health insurance plans, known as Medicare Advantage Organizations (MAOs), rather than from the federal government.  (*Id*., §§ 1395w-21 – 1395w-22.)  MAOs must contract with health care providers for the provision of medical services to their enrollees.  (42 C.F.R. § 422.2.)  These providers are known as "contract providers."  Medicare Part C also requires MAOs to cover emergency services that health care providers with whom the MAO does not contract, known as "non-contracted providers," render to enrollees in the MAO's plan.  MAOs therefore must pay non-contracted providers for those emergency services (42 U.S.C. § 1395w-22(d)(1)(E); 42 C.F.R. § 422.113), even though non-emergency services that such providers furnish to the MAO's enrollees generally are not covered by Medicare Advantage plans.  (42 C.F.R. § 422.100(b).)

Kaiser is a MAO.  It did not contract with Prime for the provision of medical services to enrollees in Kaiser's Medicare Advantage plan.  However, Prime provided emergency medical services to Kaiser enrollees as a non-contracted provider.

Kaiser removed the actions to federal district court based, in part, on the argument that the Medicare Act preempted the Medicare Advantage claims. The district court rejected Kaiser's preemption argument. Although it dismissed some of Prime's claims, the court declined to exercise supplemental jurisdiction over the remaining claims and remanded the actions to state court.

In June 2009, Prime's state court actions were coordinated as a complex case in the Los Angeles County Superior Court. Prime's January 2010 complaint in the coordinated actions divided Prime's claims into two categories. First, Prime alleged that Kaiser had contracted with Multiplan, Inc. (Multiplan), a preferred provider organization that established a network of providers, including Prime, through which Kaiser members could seek emergency medical services, and that Kaiser had failed to pay Prime the contractually-negotiated rates for those services. Second, Prime alleged that Kaiser failed to fully reimburse Prime for emergency medical services Prime provided to enrollees in Kaiser's Medicare Advantage plan. This second category of claims embodied the Medicare Advantage claims.

Kaiser demurred to the Medicare Advantage claims, asserting that they were preempted by the Medicare Act and subject to the Act's requirement of exhaustion of administrative remedies. Kaiser demurred on different grounds to Prime's other claims as well. The trial court overruled the demurrer in its entirety in April 2010.

More than three years later, Kaiser again argued, this time in a motion for summary adjudication before a different trial court judge, that Prime's Medicare Advantage claims were preempted by the Medicare Act and subject to that Act's

7

exhaustion requirement. Whereas Kaiser's demurrer failed, its summary adjudication motion succeeded: in January 2014, the trial court granted the motion on both preemption and exhaustion grounds. Prime filed a petition for writ of mandate seeking to overturn the trial court's decision. We summarily denied the petition. (*Prime Healthcare Cases* (Mar. 5, 2014, No. B254632).)

While Kaiser's summary adjudication motion was pending, the trial court consolidated with the coordinated action additional law suits that Prime had filed against Kaiser in California. In April 2014, Prime filed its first consolidated complaint in the coordinated action. The complaint stated that the parties' dispute arose from Kaiser's unlawful efforts to force Kaiser members who had the right to seek emergency medical services at Prime hospitals to obtain those services at Kaiser hospitals. Prime alleged that, as part of this scheme, Kaiser did not pay, or underpaid, Prime's claims for reimbursement from Kaiser for the provision of emergency medical services to Kaiser members. According to Prime, Kaiser owed it more than $150,000,000 as of the date of the first consolidated complaint.

Prime's claims in the first consolidated complaint fell into the following four categories: (1) claims for breach of contract and the implied covenant of good faith and fair dealing based on Kaiser's alleged failure to reimburse Prime in accordance with the payment schedule in the Multiplan contract; (2) claims for breach of contract and the implied covenant of good faith and fair dealing based on Kaiser's alleged failure to reimburse Prime in accordance with the payment schedule in Kaiser's contract with Beech Street Corporation (Beech Street), another preferred provider organization; (3) claims for breach of an implied-in-law

8

contract based on Kaiser's alleged failure to fully reimburse Prime for emergency medical services provided to Kaiser's commercial members (i.e., employer groups that purchase Kaiser plans); and (4) the Medicare Advantage claims, which Prime described in the complaint as claims for breach of an implied-in-law and implied-in-fact contract based on Kaiser's alleged failure to fully reimburse Prime for emergency medical services provided to enrollees in Kaiser's Medicare Advantage plan.[5] Prime presented its Medicare Advantage claims in the first consolidated complaint, notwithstanding the fact the trial court had ruled just a few months earlier that the claims were preempted and thus had to be brought in federal court.[6]

---

[5] Prime asserted causes of action for an open book account, violation of the California unfair competition law (Bus. & Prof. Code, § 17200 et seq.), and declaratory relief. These causes of action apply to each of the four categories of claims.

[6] In May 2014, a month after it filed the first consolidated complaint in the state court, Prime sued Kaiser in federal court, raising the Medicare Advantage claims only. Prime stated in the federal complaint that while it believed the state trial court's ruling that the Medicare Advantage claims were preempted was incorrect, it filed the federal court action "to protect [its] rights and interests" in those claims. (*Prime Healthcare La Palma, LLC et al. v. Kaiser Foundation Health Plan, Inc.* (C.D.Cal. No. CV-14-3835 SVW (JPRx)). Kaiser moved to dismiss the federal complaint on the ground that Prime had failed to exhaust its remedies with respect to the Medicare Advantage claims, as the state trial court had said it must do before suing. The federal court never ruled on Kaiser's motion because the parties agreed to stay the federal action pending resolution of the state court litigation.

9

Kaiser filed cross-claims against Prime, including Medicare Advantage-related cross-claims.

On December 31, 2014, Prime filed another state court action against Kaiser (*Prime Healthcare La Palma, LLC v. Kaiser Foundation* (Super. Ct. L.A. County, No. BC568336)). This case was deemed "related" to the coordinated action. The related case addressed Prime's claims against Kaiser that arose in 2013 and 2014.

B. *The Parties Agree To Arbitrate Their Disputes and Relitigate in the Arbitration Whether the Medicare Advantage Claims Are Preempted and Subject to Exhaustion of Administrative Remedies*

On February 7, 2015, the parties agreed to "binding arbitration" of their disputes, including Prime's Medicare Advantage claims and Kaiser's Medicare Advantage-related cross-claims, before a panel of JAMS arbitrators and under JAMS rules and procedures, "in lieu of . . . [¶] the consolidated [state court] proceeding [and] [¶] the related case." The arbitration agreement specified that the panel would not be bound by the trial court's ruling that the Medicare Advantage claims were preempted by the Medicare Act and subject to that Act's exhaustion requirement. Rather, the agreement authorized relitigation of the preemption and exhaustion questions before the panel and "empowered" the panel to resolve them, independent of the trial court's ruling.

In a paragraph captioned "Decision and Final Award," the agreement states that the panel "shall issue a Final Award within forty-five (45) days of the conclusion of the arbitration hearing. . . . [¶] The Final Award . . . may be confirmed

10

thereafter as a judgment by the Superior Court of the State of California, subject only to challenge on the grounds set forth in . . . [s]ection 1285 et seq. or on the grounds that the [panel] exceeded . . . [its] powers by making a mistake of law or legal reasoning." The agreement provides for de novo judicial review of the panel's legal conclusions and legal reasoning.

The agreement does not expressly refer to the panel's possible issuance of a partial final award or any other interlocutory award. However, the JAMS rules that govern the parties' arbitration provide that JAMS arbitrators can "render a Final Award or a Partial Final Award." (JAMS Comprehensive Arbitration Rules & Procedures, rule 24(a).) The JAMS rules also contemplate judicial "[p]roceedings to enforce, confirm, modify or vacate an Award," be it final or partial. (*Id*., rule 25.) The rules state that such proceedings "will be controlled by and conducted in conformity with the Federal Arbitration Act . . . or applicable state law." (*Ibid*.)

Following the parties' execution of the arbitration agreement, Prime initiated an arbitration demand against Kaiser. The demand presented all of Prime's claims against Kaiser that it had asserted in the superior court litigation.[7]

C.  *The Panel's Partial Final Award Regarding the Medicare Advantage Claims*

In May 2015, Kaiser filed a motion for summary adjudication asking the arbitration panel to dismiss Prime's Medicare Advantage claims on the ground that they were

---

[7]  After initiating its arbitration demand, Prime dismissed the federal action that had been stayed. (See fn. 6, *ante*.)

11

preempted by the Medicare Act and subject to that Act's exhaustion requirement, just as the trial court had ruled before the parties agreed to arbitrate their disputes. The panel ruled the opposite way, however, on both the preemption and exhaustion questions and thus denied Kaiser's motion. On September 8, 2015, the panel memorialized its preemption and exhaustion rulings in the partial final award.

D.     *The Trial Court Enters a Judgment Confirming the Partial Final Award*

On October 15, 2015, Kaiser filed a petition in the trial court to vacate the partial final award. Kaiser argued that the award should be vacated on the ground that the panel exceeded its powers by making a mistake of law or legal reasoning in concluding that Prime's Medicare Advantage claims were neither preempted by the Medicare Act nor subject to the Act's exhaustion requirement.

Kaiser's petition was assigned to the same trial court judge who had granted Kaiser's motion for summary adjudication on the Medicare Advantage claims on preemption and exhaustion grounds prior to the parties' submission of their disputes to arbitration. The second time around, however, the court changed its view. It sided with the arbitration panel on the preemption and exhaustion questions and denied Kaiser's petition. On April 29, 2016, the court entered a judgment confirming the partial final award.

E.     *Kaiser's Appeal and Writ Petition*

On May 12, 2016, Kaiser filed a notice of appeal from the judgment confirming the partial final award. Kaiser stated in

12

the notice that it was appealing under sections 904, subdivision (a)(1), and 1294(d).

While its appeal was pending, Kaiser filed a petition for a writ of mandate (*Kaiser Foundation Health Plan, Inc. et al. v. Superior Court*, No. B275985). Kaiser stated that it filed the petition because "it was not clear whether the judgment [confirming the partial final award] was a final judgment appealable under . . . sections 904.1[, subdivision] (a)[,] and 1294(d)." Kaiser thus asked us to review the judgment by way of a writ if we concluded that it was not appealable. We denied the petition, stating that "[Kaiser's] proper remedy is by way of their pending appeal . . . from the judgment . . . confirming an arbitration award."

In preparing for oral argument, however, we became concerned that the judgment confirming the partial final award might not be appealable after all. We also became concerned that we might not be able to review the merits of the confirmation of the award by way of a petition for writ of mandate either. Accordingly, we asked the parties to address at oral argument (1) whether we had jurisdiction to hear the appeal; (2) if not, whether we could treat the appeal as a petition for a writ of mandate; and (3) if the issue is properly reached, whether the trial court had jurisdiction to confirm the partial final award. Following oral argument, we requested that the parties submit supplemental briefs on these questions. At oral argument and in their supplemental briefs, both sides contended that the judgment confirming the partial final award is appealable and that, in any event, the trial court had jurisdiction to confirm the award and we thus could treat the appeal as a petition for a writ

13

of mandate and review the merits of the confirmation of the award through that vehicle.

After the supplemental briefs were filed, the parties submitted for our consideration an April 3, 2017 amendment to their arbitration agreement. The amendment recites that the parties intended all along for the arbitrators to adjudicate in the first phase of the arbitration whether the Medicare Advantage claims were preempted and/or subject to exhaustion, and to issue a partial final award on those questions. The amendment further recites that if the arbitrators ruled that the Medicare Advantage claims were not preempted and subject to exhaustion, then the parties intended for the arbitrators to adjudicate the merits of those claims in a subsequent phase. The amendment states that, "[i]n essence" the adjudication of the preemption and exhaustion questions in "Phase 1 of the arbitration would be the equivalent of a separate action for declaratory relief."

## DISCUSSION

A.    *Relevant Statutory Provisions*

The provisions of the California Arbitration Act governing the issuance of arbitration awards, trial court review of awards, and appellate court review of trial court orders and judgments approving or disapproving awards are housed in chapters 3, 4, and 5 of part 3, title 9, of the Code of Civil Procedure (§ 1282 et seq.). We summarize the provisions that are relevant here.

Section 1283.4 specifies the form and contents of an award. It provides, "The award shall be in writing and signed by the arbitrators concurring therein. It shall include a determination

14

of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." (*Ibid*.)

Section 1285 authorizes "[a]ny party to an arbitration in which an award has been made [to] petition the [trial] court to confirm, correct or vacate the award. . . ." In turn, section 1286 provides that, in disposing of such a petition, the court "shall confirm the award as made . . . unless . . . it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding."[8] If the court confirms the award, then section 1287.4 requires that "judgment shall be entered in conformity therewith." Section 1287.4 further provides that "[t]he judgment so entered . . . is subject to all the provisions of law relating to[] a judgment in a civil action . . . ."

---

[8] The grounds for vacating an award are set forth in section 1286.2; they are narrow. (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1344 (*Cable Connection*).) Among the listed grounds is that the arbitrators "'exceeded their powers.'" (*Id*. at p. 1366.) The parties to an arbitration agreement may, as Prime and Kaiser did, specify that arbitrators exceed their powers if they "make [a] mistake[] of law or legal reasoning," and that arbitrators' legal rulings are subject to de novo judicial review. (*Id*. at p. 1355.) "If the parties constrain the arbitrators' authority by requiring a dispute to be decided according to the rule of law, *and* make plain their intention that the award is reviewable for legal error, the general rule of limited review [of arbitration awards] has been displaced by the parties' agreement." (*Ibid*.) Kaiser argues that the panel exceeded its authority, and thus the partial final award should be vacated, because the ruling that Prime's Medicare Advantage claims are neither preempted by the Medicare Act nor subject to that Act's exhaustion requirement constitutes a mistake of law or legal reasoning.

15

Section 1294 "lists the types of orders associated with [an] arbitration that may be appealed." (*Sunnyvale Unified School Dist. v. Jacobs* (2009) 171 Cal.App.4th 168, 174.) It provides, "An aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration. [¶] (b) An order dismissing a petition to confirm, correct or vacate an award. [¶] (c) An order vacating an award unless a rehearing in arbitration is ordered. [¶] (d) A judgment entered pursuant to this title. [¶] (e) A special order after final judgment."[9] (§ 1294.)

B.  *The Judgment Confirming the Partial Final Award Is Not Appealable Because It Is Not a Final Judgment*

Section 904.1, subdivision (a), governs the right to appeal in civil actions. It codifies the "one final judgment rule," which provides that an ""an appeal may be taken only from the final judgment in an entire action."' [Citation.]" (*In re Baycol Cases I*

---

[9]   Section 1294's list of appealable orders does not include orders denying petitions to confirm, correct, or vacate an award; orders dismissing such petitions, which are appealable under section 1294, subdivision (c), are not the same as orders denying them. (*Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1453-1454.) This gap in section 1294 is explained by the fact that "[i]f the trial court . . . does not dismiss the petition[, but] also does not correct or vacate an arbitration award, it *must* confirm the award. Entry of judgment in conformity therewith is required [citation], resulting in an appealable judgment under . . . section 1294[(d)]. Similarly, if the nondismissing trial court does not confirm the award (or confirm [it] as corrected), the court must vacate it, resulting in an appealable order under . . . section 1294, subdivision (c)." (*Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, 9.)

16

*& II* (2011) 51 Cal.4th 751, 756.)  A judgment is final, and therefore appealable, when it embodies "the final determination of the rights of the parties in an action or proceeding" (§ 577).  A judgment constitutes the final determination of the parties' rights "'where no issue is left for future consideration except the fact of compliance or noncompliance with [its] terms . . . .' [Citation.]" (*Olson v. Cory* (1983) 35 Cal.3d 390, 399.)  It is a judgment's substance, not its form or label, which determines whether it is final.  (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 698-699.)  If a judgment is not appealable, an appellate court lacks jurisdiction to hear a purported appeal from it.  (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.)

Under the one final judgment rule, interlocutory judgments generally are not appealable.  (*In re Baycol Cases I & II*, *supra*, 51 Cal.4th at pp. 754, 756.)  This prohibition is in keeping with the premise of the one final judgment rule "'"that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case."' [Citations.]" (*Id.* at p. 756.)

The one final judgment rule applies to judgments confirming arbitration awards.  (*Rubin v. Western Mutual Ins. Co.* (1999) 71 Cal.App.4th 1539, 1547-1548 (*Rubin*).)  This is manifested in the terms of section 1287.4, which, as indicated above, governs the entry of judgments confirming arbitration awards.  Section 1287.4 states that any such judgment "has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action of the same jurisdictional classification."  The one final judgment rule is a "provision[] of law" relating to a civil judgment.  Judgments confirming

17

arbitration awards thus are "subject to" the one final judgment rule. Because the one final judgment rule is incorporated into the California Arbitration Act through section 1287.4, a judgment under section 1294(d) confirming an arbitration award must be a final judgment for it to be appealable. Nothing in the California Arbitration Act suggests that judgments confirming arbitration awards should be treated differently for purposes of appealability than judgments in civil cases that did not go to arbitration. (*Rubin*, *supra*, at p. 1547.)

In *Rubin*, the court held that a judgment confirming an arbitration award against an insurer appraising the amount of earthquake damage to its insured's house did not satisfy the one final judgment rule, and thus was nonappealable, because the award was not a final determination of the parties' rights. Left unresolved by the award, and remaining to be tried in arbitration, were the merits of all four of the insured's causes of action. The court thus dismissed the insured's appeal for lack of jurisdiction to hear it. (*Rubin*, *supra*, 71 Cal.App.4th at pp. 1547-1548.)

*Rubin* did not address whether the one final judgment rule applies to the orders listed in section 1294. It held only that section 1294 judgments are subject to the rule. (*Rubin*, *supra*, 71 Cal.App.4th at p. 1548.) In *Judge*, we answered the question left open in *Rubin* and held that "a finality requirement [applies] to [the] orders listed in section 1294," not just to judgments entered under subdivision (d) of that section. (*Judge*, *supra*, 232 Cal.App.4th at p. 634.) Applying the finality requirement, we concluded that an order vacating an arbitration award that determined only, "as a threshold matter, that [the plaintiff's] class and representative claims were subject to arbitration," was

18

nonappealable because the "award did not rule on the merits of those claims," just as the award in *Rubin* left unaddressed the merits of the claims in that case.  (*Id.* at p. 622.)

The judgment confirming the panel's partial final award in this case suffers from the same lack of finality as the judgment confirming the award in *Rubin* and the order vacating the award in *Judge*.  The partial final award was confined to the resolution of the questions of Medicare Act preemption and exhaustion.  It is "final" as to those questions.  But as its name highlights, it was only "partially final" as to the arbitration as a whole.  The award and the judgment confirming it did not decide the merits of Prime's Medicare Advantage claims, let alone the merits of Prime's various other claims (which do not implicate Prime's provision of services to Kaiser's Medicare Advantage enrollees), plus Kaiser's cross-claims to boot.  All of those claims must still be resolved in the arbitration, culminating in a final award.  That will be followed by further proceedings in the trial court, initiated by petitions to confirm or vacate the award, culminating in a final judgment or order that determines the parties' rights.  Because the judgment confirming the partial final award is not a final judgment, it is not appealable under section 1294(d); therefore we lack jurisdiction to hear Kaiser's appeal.

The trial court could not have simply entered an order confirming the partial final award and bypassed entry of judgment.  Because the court confirmed the award, it was required by section 1287 to enter judgment in conformity therewith.  Indeed, section 1294's list of appealable orders does not include orders confirming awards; such orders must be incorporated into judgments.  (See *Law Offices of David S. Karton v. Segreto*, *supra*, 176 Cal.App.4th at p. 9.)  And to be

19

appealable, those judgments must be final, in accordance with the one final judgment rule. In any event, under *Judge*, *supra*, 232 Cal.App.4th at page 634, orders related to arbitration awards are not appealable under section 1294 unless they are final. Thus, even if the trial court could have labeled its confirmation of the partial final award as just an "order," without folding it into a judgment, the finality problem still would not have been solved.

In the face of the finality requirement and its application to the arbitration setting in *Rubin* and *Judge*, Kaiser and Prime nevertheless argue that the judgment confirming the partial final award's ruling on the Medicare Act preemption and exhaustion questions is appealable. Their arguments are unavailing.

Prime's principal contention regarding appealability is that the partial final award was akin to a declaratory judgment on the questions of Medicare Act preemption and exhaustion, which the trial court then confirmed. Because declaratory judgments are appealable, Prime asserts that the partial final award and the attendant judgment confirming it are appealable. To support this argument, Prime refers to the April 3, 2017 amendment to the parties' arbitration agreement, which states that Kaiser and Prime intended that, "[i]n essence," the adjudication of the preemption and exhaustion issues in an initial phase of the arbitration "would be the equivalent of a separate action for declaratory relief." The problem is that the parties did not submit the preemption and exhaustion issues to the panel in a separate, stand-alone arbitration. Rather, they submitted all of their disputed issues to arbitration in one fell swoop. Under these circumstances, the parties' request that the panel decide the Medicare Act preemption and exhaustion issues before proceeding to the other issues does not render the partial final

20

award the equivalent of an appealable final order in a declaratory judgment action in civil litigation. It renders the partial final award the equivalent of a nonappealable interlocutory order in civil litigation.

For its part, Kaiser's principal contention regarding appealability is that the California Supreme Court's decision in *Cable Connection* supports the proposition that appellate review of an order confirming or vacating a partial final arbitration award "does not conflict with the one final judgment rule for appealability." We rejected that very argument in *Judge.* Like *Judge*, "*Cable Connection* involved an appeal from an order vacating an arbitration award that concluded that an arbitration provision allowed for class arbitration." (*Judge, supra*, 232 Cal.App.4th at p. 637.) As Kaiser does here, the defendants in *Judge* asserted that "because in *Cable Connection* the Court of Appeal heard the appeal and the Supreme Court granted review, both courts impliedly found that the order was appealable." (*Ibid*.) We disagreed, stating that no such implied finding can be derived from *Cable Connection* because "[a] case . . . 'is authority only for an issue actually considered and decided,'" and *Cable Connection* did not consider and decide whether the order was appealable. (*Judge, supra*, at p. 637.) The issue was unaddressed. (See *Cable Connection, supra*, 44 Cal.4th at p. 1367 (conc. opn. of Baxter, J.) ["[I]t is questionable whether parties to an arbitration agreement may contract to obtain premature judicial merit review of arbitral decisions that are labeled as 'awards,' but which in substance merely resolve one or more legal or factual issues pertaining to only a portion of the controversy submitted to the arbitrators for their determination. Our court

has not addressed this issue, and it has not been raised or litigated in the instant case"].)

Kaiser contends that what we said in *Judge* about *Cable Connection* was wrong because (according to Kaiser) subject matter jurisdiction (including appellate jurisdiction) "is *always* an issue that is necessarily considered and decided" when another jurisdictional issue is considered and decided, and in *Cable Connection*, the Supreme Court considered and decided that the trial court had jurisdiction to review de novo the legal basis of the arbitrator's award.[10]  Thus, Kaiser asserts, the Supreme Court in *Cable Connection* necessarily also considered whether the order at issue was appealable and decided that it was.  As a result, Kaiser says, *Cable Connection* constitutes precedent for our exercise of jurisdiction over Kaiser's appeal.

Kaiser is mistaken about *Cable Connection's* precedential force.  When an appellate decision does not expressly address a jurisdictional issue, courts confronting the same issue in a subsequent case should not construe the failure of the court in the previous case to address it as a pronouncement on jurisdiction.  Jurisdictional precedent is not established by silence.  (*Gage v. Atwater* (1902) 136 Cal. 170, 174 ["No objection has been made to the hearing of the appeal herein, and we have considered it as if the order [substituting attorneys] were appealable.  We do not, however, wish our silence upon that question to be taken as indicating any opinion upon the question,

_____

[10]     As indicated above (fn. 8, *ante*), in *Cable Connection*, the Supreme Court held that parties to an arbitration may provide in their agreement that arbitrators exceed their authority if their awards are based on erroneous legal conclusions or legal reasoning.

22

or as a precedent to be hereafter relied upon"]; *Edlund v. Los Altos Builders* (1951) 106 Cal.App.2d 350, 356-357 [deciding jurisdictional issue that was unaddressed and thus "left open" in *Gage* and holding that order substituting attorneys was not appealable]; see also *Lewis v. Casey* (1996) 518 U.S. 343, 352, fn. 2 [116 S. Ct. 2174, 135 L.Ed.2d 606] ["we have repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect"].)

The two cases that Kaiser cites are not to the contrary. *Haden v. Haden* (1953) 120 Cal.App.2d 722, 726, says that "[a] judgment presumes jurisdiction over the subject matter and over the persons." It does not say that an appellate court can create precedent on appealability by simply not addressing appealability. Kaiser's second case, *Barry v. State Bar of California* (2017) 2 Cal.5th 318, is far afield. It was an anti-SLAPP (strategic lawsuit against public participation) case, which held that a court lacking subject matter jurisdiction over a claim may grant a special motion to strike under section 425.16 based on that lack of jurisdiction. (*Barry*, at pp. 320-321.) It has no bearing on the appealability of the trial court's confirmation of the partial final award in this case.

C.  *The Partial Final Award Is Not an Award Under Section 1283.4, Thus Depriving the Trial Court of Jurisdiction To Confirm It*

Section 1283.4 specifies the requirements for an arbitration award. It provides that an award must "include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." (*Ibid*.) An arbitrator's designation of his or her ruling as an "award"

23

does not make it one under section 1283.4.  Likewise, an award's qualification as an award under the rules of arbitration bodies, such as JAMS and similar entities, does not control the section 1283.4 inquiry.  (*Judge*, *supra*, 232 Cal.App.4th at p. 636 [American Arbitration Association rules providing for partial awards do not confer jurisdiction on courts to review such awards].)  It is instead incumbent on the trial court, before confirming or vacating what has been deemed an award, "to ensure that the . . . 'award' is an 'award' within the meaning of [section 1283.4]."  (*Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 767.)  If the "award" does not qualify as an award under section 1283.4, then the court is deprived of jurisdiction to confirm or vacate it.  (See *Judge*, *supra*, 232 Cal.App.4th at p. 634, fn. 12.)

1.  *Like the Clause Construction Award in* Judge*, the Partial Final Award Decided a Threshold Issue, and No More*

As indicated above, in *Judge*, we held that an order vacating an arbitration award construing the arbitration clause in the parties' agreement to authorize arbitration of the plaintiff's class and representative claims was nonappealable under section 1294 because it was not final.  That holding was bound up in our separate conclusion that the award did not meet the section 1283.4 specifications for an award because it did not "determine all of the questions that are necessary for the arbitrator to decide in order to determine the controversy.  Rather, the clause construction award only resolved what the arbitrator described as the 'threshold matter' of 'whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a

24

class" and allowed the class claims to continue. Because the clause construction award does not qualify as an 'award' under section 1283.4, the trial court's order is not an order vacating an arbitration award, and it is not appealable." (*Judge, supra*, 232 Cal.App.4th at pp. 633-634.) We did not decide in *Judge* whether the trial court had jurisdiction to confirm or vacate the award in the first place because that issue was not before us. We admonished, however, that it was "highly unlikely" that the court had jurisdiction precisely because the award did not resolve all of the questions necessary to determine the controversy. We thus invited the plaintiff to file in the trial court a motion for reconsideration of the order vacating the award, based on the absence of jurisdiction. (*Id*. at p. 634, fn.12.)

Whether the trial court had jurisdiction to confirm or vacate the partial final award in this case is before us now because we asked the parties to address it. We asked that question because if the court lacked jurisdiction, then we cannot review the merits of the judgment confirming the partial final award by treating Kaiser's appeal as a petition for a writ of mandate to vacate the judgment. (*People v. Chlad* (1992) 6 Cal.App.4th 1719, 1726, fn. 7.) Both Kaiser and Prime argue the trial court had jurisdiction because the partial final award meets the section 1283.4 criteria for an award.

We disagree. Like the clause construction award in *Judge*, the partial final award did not "determin[e] . . . all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy" (§ 1283.4). The controversy between Kaiser and Prime encompasses a wide range of questions. The sole question the partial final award determined was whether Prime's Medicare Advantage claims are preempted

25

by the Medicare Act and subject to that Act's exhaustion requirement. The partial final award did not resolve all of the other questions necessary to determine the parties' controversy. These other questions entail not just whether Kaiser is liable to Prime on the Medicare Advantage claims, but also whether Kaiser is liable on Prime's other claims and whether Prime is liable on Kaiser's cross-claims. These questions are pending before the panel through Prime's arbitration demand. The parties have yet to ask the panel to rule on them. They are, however, in controversy in the arbitration. Thus, like the clause construction award in *Judge*, the partial final award here is not an award.

Prime contends that *Judge* is distinguishable because the clause construction award there addressed just a threshold matter, whereas the partial final award here did not. Prime is wrong. The partial final award is as equally a threshold ruling as the clause construction award in *Judge*. The partial final award determined that Prime's Medicare Advantage claims could proceed in the arbitration because they are not preempted and subject to exhaustion. That is no different than the *Judge* clause construction award's determination that the plaintiff's class and representative claims in that case could proceed in the arbitration. Prime is right that the partial final award "left nothing to be decided" on the issues of Medicare Act preemption and exhaustion. But it left everything else in the arbitration to be decided, just like the clause construction award in *Judge* did.

Prime fares no better in its attempt to distinguish *Judge* on the ground that the parties in that case did not submit the clause construction issue to the arbitrator, whereas here, the parties submitted the Medicare Act preemption and exhaustion issues to

26

the panel. It is true that the arbitrator in *Judge* reached out and decided the clause construction issue. That played no role, however, in our conclusion that the clause construction award was not an award under section 1283.4. What mattered is that the clause construction award left the merits of plaintiff's claims unresolved.

It also is correct, as Prime points out, that in *Judge*, the trial court vacated the arbitration award, whereas here, the court confirmed the award. But this, too, is irrelevant. An award must be an "award" under section 1283.4 before it can be either confirmed or vacated. How a trial court disposes of a petition to confirm or vacate a putative award has no bearing on whether the award satisfies section 1283.4's strictures.

2.    *Compliance With Section 1283.4's Award Requirement Prevents Piecemeal Judicial Review of Arbitrators' Rulings*

In *Judge*, we observed that if section 1294 were construed to permit appeals from nonfinal judgments and orders associated with arbitration awards, then "[a]ggrieved parties could appeal orders vacating interim arbitration orders resolving discovery disputes, sustaining or overruling demurrers, granting summary adjudication on certain claims, ruling on liability but not damages in a bifurcated proceeding, and denying motions for a new arbitration hearing. It would be anomalous to allow parties participating in an arbitration to appeal orders vacating interim arbitration awards when the underlying orders are not appealable in nonarbitration cases." (*Judge, supra*, 232 Cal.App.4th at pp. 634-635.) Permitting appellate review of interlocutory orders approving or disapproving arbitration

27

awards, we cautioned, "would interfere with the "'efficient, streamlined procedure[]'" that is supposed to be arbitration's 'fundamental attribute.'" (*Id*. at p. 634.) This attribute of arbitration "requires that judicial intervention in the arbitration process be minimized." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10.)

Concerns about piecemeal judicial review of arbitration rulings also informed our conclusion in *Judge* that the clause construction award at issue there did not qualify as a section 1283.4 award. *Judge* recognized that compliance with the award requirement ensures that judicial approval or disapproval of an award is timed to the Legislature's specifications, not the parties' preferences.

In arguing that the partial final award is a section 1283.4 award because it left nothing to be decided on the Medicare Act preemption and exhaustion questions, Kaiser and Prime fail to offer a limiting principle that would distinguish arbitrator rulings that meet section 1283.4 requirements and those that do not. Under their approach, anything and everything would qualify as an award. If the partial final award allowing the Medicare Advantage claims to proceed in arbitration is a section 1283.4 award, then so too would be an interim award determining liability on the Medicare Advantage claims. The trial court thus would have jurisdiction to confirm or vacate the liability award on those claims, even if all the other claims remained pending in the arbitration. Similarly, an award on liability on Prime's claims related to the Multiplan contract would be an award that the court could confirm or vacate, even if the resolution of damages on those claims, as well as the

resolution of liability and damages on Prime's claims related to the Beech Street contract, remained pending in the arbitration.

In short, if Kaiser and Prime are right and the partial final award is an award, then nothing would prevent parties to an arbitration from jumping back and forth between the arbitration forum and courtrooms. They could obtain an award from arbitrators one day, seek judicial approval or disapproval of the award the next day, only to return to arbitration the day after that to resume arbitrating what remains in their dispute. Arbitrator determinations of discrete questions within a controversy would be blurred with determination of the controversy itself, thereby rendering the section 1283.4 requirements meaningless.

The text of section 1283.4 is clear: It specifies that an award must resolve the parties' controversy, not a question within the controversy. Our conclusion that the partial final award is not an award hews to that command.

Kaiser claims that our reading of section 1283.4 to foreclose judicial review of the partial final award in this case would force parties "to go through [the] wasteful procedural formalit[y]" of filing separate, but related arbitrations "in complex, multi-dispute matters," instead of presenting all of their disputes in one arbitration and seeking "timely review" of awards on discrete disputes. This contention overlooks that the tack of sporadic judicial intrusion into ongoing arbitrations that Kaiser and Prime are advocating would be highly inefficient in its own right because it would disrupt the "streamlined process" that, as we noted above, is a hallmark of arbitration. (*Judge, supra,* 232 Cal.App.4th at p. 634.)

3.    *Section 1283.4 Does Not Bar Judicial Review of All Interim Awards*

We recognize that there is significant overlap between our conclusion that the trial court's judgment confirming the partial final award is not appealable under section 1294 because it was not a final judgment and our conclusion that the court lacked jurisdiction in the first place because the partial final award does not qualify as a section 1283.4 award.  Underpinning both conclusions is that the partial final award resolved only the questions of Medicare Act preemption and exhaustion, and nothing more.  Whether an award is an award and whether a judgment or order confirming the award is appealable are not always coterminous inquiries, however.  In some cases, an interim award will meet the section 1283.4 requirements for an award, thus giving the trial court jurisdiction to confirm or vacate it and enabling the appellate court to review by writ the merits of the order confirming or vacating an award, even if the order is not appealable under section 1294.

*Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415 (*Hightower*) is such a case.  The question presented in that writ proceeding was "whether an arbitrator, in order to provide a proper remedy for the prevailing party, may resolve certain critical areas of a dispute in a '*partial* final award' but reserve jurisdiction to later decide, by a '*final* award,' issues which will likely arise as a result of the implementation of that remedy," without offending section 1283.4.  (*Hightower*, at p. 1420.)  The court "answere[d] that question in the affirmative," based on the "specific factual context of [the] case" (*id*. at p. 1419), stating that neither section 1283.4 nor case law "foreclose[s] the utilization of a multiple incremental or successive award process as a means,

30

*in an appropriate case*, of finally deciding *all* submitted issues." (*Hightower*, at p. 1434.) We have no quarrel with that answer based on the facts of *Hightower*. The approval of the partial final award in *Hightower* does not, however, furnish section 1283.4 cover to the partial final award in this case. The "specific factual context" on which the Court of Appeal's section 1283.4 ruling in *Hightower* rests is quite different from the factual context here.

   *Hightower* arose out of a shareholder dispute between two individuals, Hightower and O'Dowd, each of whom owned one-half of a company they jointly formed. Their shareholder agreement contained a "buy-sell provision," which allowed either party to offer to sell his shares to the other at a specified price. The other party then had 90 days either to sell his shares to the offeror at that price or to buy the offeror's shares for that same price. (*Hightower, supra*, 86 Cal.App.4th at pp. 1420-1421.) O'Dowd decided to buy Hightower's shares; so, he sought and obtained the necessary financing, and offered to purchase Hightower's shares for $47 million. In response, Hightower sought to obtain his own financing to buy O'Dowd's shares at that price, consistent with his rights under the buy-sell provision. Hightower was unable to secure financing, however. At that point, Hightower was obligated to sell his shares to O'Dowd, as contemplated by the buy-sell provision. Hightower did not do that, however. Instead, he attributed his inability to get financing to purchase O'Dowd's shares to alleged wrongdoing by O'Dowd. Hightower demanded arbitration under the shareholder agreement's arbitration clause. In the demand, Hightower alleged that O'Dowd breached his fiduciary duty to Hightower and the covenant of good faith and fair dealing. O'Dowd counterclaimed, alleging Hightower breached the shareholder

31

agreement by not selling his shares to O'Dowd once he failed to secure financing to purchase O'Dowd's shares. (*Id.* at pp. 1421-1423.)

The arbitrator rejected Hightower's claims, concluding that O'Dowd was not responsible for Hightower's inability to secure financing and that Hightower breached the shareholder agreement by blocking O'Dowd from completing his purchase of Hightower's shares. The arbitrator faced a problem in fashioning a remedy for O'Dowd, however, because the 90-day period during which Hightower either had to sell his shares to O'Dowd for $47 million or buy O'Dowd's shares at that price had long since lapsed; and with the passage of time, the financiers who had committed to back O'Dowd's purchase had pulled out due to the uncertainty caused by Hightower's initiation of the arbitration. It thus was impossible for the arbitrator to provide O'Dowd the full benefit of the bargain from the now-collapsed transaction. Seeking to approximate that benefit as closely as possible notwithstanding the changed circumstances, the arbitrator issued a "partial final award" that gave O'Dowd the option to obtain new financing for the purchase of Hightower's shares within six months from the date of the award. The arbitrator reserved jurisdiction to determine issues that might arise depending on whether O'Dowd exercised the option or not. Those issues included (1) the amount of costs, unknown as of the date of the award, O'Dowd might incur to obtain the new financing to purchase Hightower's shares if he exercised that option; and (2) the amount of damages in the form of attorney's fees and the recoupment of financing charges, both of which also were unknown as of the date of the award, if O'Dowd did not exercise the option. (*Hightower*, *supra*, 86 Cal.App.4th at pp. 1424-1428.)

Hightower petitioned the trial court to vacate the award. The court denied the petition but did not enter an order or judgment confirming the award. Hightower then filed a petition for a writ of mandate asking the Court of Appeal to direct the trial court either to vacate the order denying his petition to vacate the award and enter a new order granting the petition, or enter an order and judgment confirming the award. He argued that section 1283.4 mandates that arbitrators issue "a *single* final award which resolves *all* issues placed in dispute by the parties and thus an arbitrator is without power to issue partial or 'piecemeal' awards . . . ." (*Hightower, supra,* 86 Cal.App.4th at pp. 1428-1431.)

The Court of Appeal disagreed. It held that section 1283.4 does not impose a blanket prohibition on interim awards that otherwise meet that provision's specifications for an award. (*Hightower, supra,* 86 Cal.App.4th at pp. 1439, 1441.) The court concluded that the partial final award for O'Dowd satisfied those standards because it did "not improperly [leave] undecided issues 'necessary in order to determine the controversy.' Rather, [the award] determined all issues that [were] necessary to the resolution of the essential dispute arising from Hightower's breach. . . . [Citations.] Nothing remains to be resolved except those *potential and conditional* issues that necessarily could not have been determined . . . when the [award] was issued." (*Id.* at p. 1439, italics added, fn. omitted.) Those issues, the court stressed, were "not capable of resolution until *after* O'Dowd had exercised his option and completed the necessary preparations to complete the purchase of Hightower's shares." (*Ibid.*) The court also reasoned that the partial final award was necessary to give meaning to the option right the arbitrator conferred on O'Dowd.

33

It stated, "this option would be of no value to O'Dowd unless it were a firm and final right," embodied in an award; "[w]ithout assurance that [this] . . . right . . . was finally resolved, it would be difficult [for O'Dowd] to obtain the new financing, and enforcement of the option right would be subject to continuing uncertainty." (*Id*. at p. 1438.) The court concluded that, under those unique and particular circumstances, the arbitrator's use of an "incremental process" and the reservation of jurisdiction to make a final award did not offend section 1283.4. (*Hightower*, at p. 1439.) The court also rejected Hightower's argument that "sanction[ing] such an incremental award process" would prevent appellate review of interim awards. It indicated that partial awards satisfying section 1283.4 would be subject to confirmation, and the interlocutory judgment of confirmation would be subject to review by writ. (*Hightower*, at p. 1440.)[11]

We devote much attention to *Hightower* because Kaiser and Prime place great weight on it. They assert that if the partial final award in that case was an award, then so too is the partial final award in this case. They are wrong. The arbitrator in *Hightower* resolved all the issues necessary as of the date of the award to determine the parties' controversy regarding the breach of the shareholder agreement and the appropriate remedy for the breach. The issues left open for resolution in a subsequent award simply could not have been decided as part of the partial final award because their nature and scope were uncertain as of the

---

[11]    As to writ relief in *Hightower* itself, the court issued a writ of mandate directing the trial court to enter an order and interlocutory judgment confirming the partial final award (which, as indicated above, it had not done when denying the petition to vacate). *(Hightower, supra,* 86 Cal.App.4th at p. 1441.)

34

award date.  Those issues would take shape based on contingent events that might, or might not, occur during and after the option period.  By contrast here, the issues left open by the partial final award were not potential and conditional ones that would spring into existence based on events that had yet to transpire.  Those issues were known and capable of being resolved simultaneously with the Medicare Act preemption and exhaustion issues.[12]  The parties simply chose to present the remaining issues to the panel at a later time.  This is a far cry from what happened in *Hightower*.[13]

_____

[12]    Similarly in *Judge*, we pointed out that, unlike the partial final award in *Hightower*, the clause construction award in *Judge* did not "merely reserve potential or conditional issues relating to implementation of a remedy." (*Judge, supra*, 232 Cal.App.4th at p. 636.)

[13]    Kaiser and Prime both argue that *Roehl v. Ritchie* (2007) 147 Cal.App.4th 338 supports their contention that the partial final award constitutes a section 1283.4 award.  It does not. *Roehl* involved an appeal from a judgment confirming a second arbitration award in a trust dispute.  The arbitrator had reserved jurisdiction in the first award to issue the second one.  The first award was confirmed in a judgment, which, in turn, was affirmed in an initial appeal.  In the second appeal, the appellant argued that the arbitrator's issuance of incremental awards was prohibited by section 1283.4.  Citing *Hightower*, the Court of Appeal rejected that argument. (*Roehl*, at p. 351.)  Most relevant to the issues here, the appellant in *Roehl* also argued, that unlike in *Hightower*, the arbitrator could have resolved all the issues initially submitted to him in the first arbitration award.  The court did not consider that argument because the appellant forfeited it; "[t]he time to make that challenge," the court said, "was in the first appeal, where the first arbitration award was [at issue]," but the appellant failed to raise it at that time. (*Roehl*, at

In sum, because the partial final award is not an award, the trial court lacked jurisdiction to confirm it. And because of the trial court's lack of jurisdiction, we cannot review the merits of the confirmation of the partial final award by treating Kaiser's appeal as a petition for writ of mandate.

Kaiser contends that our shutting off of writ review of the merits of the partial final award in this case will make parties in other cases "less inclined to arbitrate" and thus conflicts with California's policy that encourages arbitration. Kaiser is correct that California's policy is to promote arbitration as an alternative to litigation. (See *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 701.) The availability of judicial review has never been a selling point of arbitration, however. To the contrary, it has long been recognized that parties typically choose arbitration precisely to avoid "the complications of traditional judicial review." (*Cable Connection, supra*, 44 Cal.4th at p. 1358.) As our Supreme Court put it, "the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels . . . ." (*Moncharsh v. Heily & Blase, supra*, 3 Cal.4th at p. 10; see *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 831 ["Limited judicial review is a well-understood feature of private arbitration, inherent in the nature of the arbitral forum as an informal, expeditious, and efficient alternative means of dispute resolution"].) Our decision denying

_____

p. 352.) Because *Roehl* was decided on forfeiture grounds, it did not address whether the second arbitration award was consistent with section 1283.4. *Roehl* thus sheds no light on whether the partial final award in this case qualifies as a section 1283.4 award.

36

review of the merits of the partial final award by writ thus does not frustrate the policy favoring arbitration—it promotes that policy.

We are, however, treating Kaiser's appeal as a petition for writ of mandate for the limited purpose of directing the trial court to vacate its judgment confirming the partial final award on account of its lack of jurisdiction to confirm it, and to enter a new order dismissing Kaiser's petition to vacate the award. We are not, as was done in *Judge, supra*, 232 Cal.App.4th at page 634, footnote 12, simply inviting the filing of a motion for reconsideration of the order denying Kaiser's petition to vacate the partial final award. We have the power in this case to direct the trial court to vacate its judgment confirming the award and are exercising that power.[14]

---

[14] We recognize appellate courts should exercise their discretion to treat an improper appeal as a petition for writ of mandate only in "unusual circumstances." (*Olson v. Cory* (1983) 35 Cal.3d 390, 401.) Such circumstances are present in this case. The issue of appealability was not clear. (*Ibid.* ["that the issue of appealability was far from clear in advance" was an "unusual circumstance" justifying the Supreme Court's decision "to treat the purported appeal as a petition for writ of mandate"].) For this reason, Kaiser filed a petition for writ of mandate as a protective matter. As discussed, this court summarily denied that petition before it reached the appealability issue. Once the issue of appealability was squarely confronted by this court, we requested supplemental briefing. As a result, whether the trial court had jurisdiction to confirm the partial final award has been fully briefed, and the existing record includes in substance the elements necessary for a proceeding for a writ of mandate in this court. (*Ibid.*; see *Hall v. Superior Court* (2016) 3 Cal.App.5th 792, 807-808.)

## DISPOSITION

Let a preemptory writ of mandate issue, directing the trial court to vacate its judgment confirming the "Partial Final Award Re Medicare Advantage Claims" that the arbitration panel issued, and to enter a new and different order dismissing Kaiser's petition to vacate that award. The parties shall bear their own costs in this proceeding.

SMALL, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.