Filed 2/10/22  Econergy v. Deol CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ECONERGY, INC., et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>JASPAL SINGH DEOL,<br><br>    Defendant and Appellant. | H046723<br>(Santa Clara County<br>Super. Ct. No. 17CV314877) |

## I.  INTRODUCTION

Defendant Jaspal Singh Deol appeals from a judgment confirming a final arbitration award.  The arbitration involved a business dispute between Deol and plaintiffs Econergy, Inc. (Econergy), Prabhakar Goel (Goel), and Goel Family Ventures I LP (Goel Ventures).

On appeal, Deol contends that the arbitrator exceeded his powers by failing to follow the law and by ordering overbroad injunctive relief, and therefore the arbitration award must be vacated or corrected as to certain relief.  Second, Deol argues that the trial court judgment does not conform to the final arbitration award with respect to certain relief, and therefore the judgment must be corrected.  Third, he contends that the injunctive relief in the judgment is void, based on a bankruptcy stay that was in place after he filed for bankruptcy.

For reasons that we will explain, we will modify the trial court's order confirming the final arbitration award and the trial court's judgment, so that the order and the judgment conform to the final arbitration award. As so modified, we will affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Deol was the president, CEO, and sole shareholder of Econergy, a California corporation. Econergy sought to develop a solar power plant in India. Deol acquired approximately 10.2 acres of land near Ludhiana, India (the Ludhiana land), which he leased to Econergy for the power plant project.

Goel was the managing partner of Goel Ventures, a California partnership. Goel Ventures was interested in investing in Econergy and developing the power plant project.

### A. *The Development Agreement*

In June 2011, the four parties—Deol, Econergy, Goel, and Goel Ventures— entered into a "Project Co-development and Investment Agreement" (the development agreement). Under the development agreement, Deol would reduce his equity ownership in Econergy to 51 percent, and Goel Ventures would take a 49 percent equity ownership in Econergy by contributing $212,745, which was in addition to money it had previously contributed. Deol and Goel were to be directors on Econergy's two-member board of directors. Goel Ventures was given an option to purchase one-half of the project land for $300,000. The development agreement provided that "[a]ny disputes under this Agreement" were subject to binding arbitration with JAMS.

### B. *The Loan Agreement*

In November 2011, Goel entered into a loan agreement with Econergy in which Goel agreed to loan Econergy up to $1.6 million, with an interest rate of 15 percent, to be used for specified purposes, including installation of the plant and machinery for the project. The loan was to be made "incrementally to service cash needs as they arise." Monthly repayments were to commence on July 1, 2012, and any unpaid portion had to

2

be paid "as a balloon payment after 48 months." The loan agreement provided that if a delay in payment extended beyond 90 days, Goel "will be entitled to invoke any and all guarantees and possess any and all collateral provided as Security . . . ."

Under the loan agreement, Deol personally guaranteed 51 percent of the loan amount and interest. The agreement provided that Deol "shall pledge all his shares in [Econergy] in favor of [Goel] and [Goel] shall have the right to forfeit the shares of [Deol]" in the event of a default in the payment of the loan. The agreement further provided that Deol "agrees to mortgage the [Ludhiana land] in favor of [Goel] . . . against the Loan," and that in the event of a default, Deol "shall transfer the Land to [Goel] . . . ."

The loan agreement contained an arbitration provision that applied to "[d]isputes arising between the Parties out of or in connection with" the loan agreement. The loan agreement provided that California law would be applied to the dispute, and that the agreement would be governed by, and construed in accordance with, California law.

### C. *The Dispute*

The power plant was completed in early 2012. By mid-2012, tensions began to develop between Goel and Deol over a number of issues. In mid-2013, Deol took actions aimed at taking control of Econergy, excluding Goel Ventures, and causing Econergy to disavow its obligations on the loan from Goel.

### D. *The Arbitration*

In late 2013, Goel, and later Goel Ventures, sought arbitration against Deol and Econergy through JAMS for breach of the development agreement, breach of the loan agreement, and breach of fiduciary duty. Deol and Econergy filed counterclaims, which included breach of the development and loan agreements, breach of the implied covenant of good faith and fair dealing, conversion, breach of fiduciary duty, and usury.

#### 1. **June 21, 2017 partial award regarding Deol's breach of the loan agreement**

Following an arbitration hearing in San Jose over the course of several days, the arbitrator issued a corrected "partial final award" on June 21, 2017. (Capitalization

omitted.)  The arbitrator determined, among other things, that Goel had advanced nearly $1 million to Econergy under the loan agreement, and that Econergy had defaulted on the loan.  After applying credits to Econergy against the amount, Goel was awarded $690,801.16 for breach of the loan agreement by Econergy.  Based on Deol's personal guarantee in the loan agreement, Deol was obligated to pay 51 percent of Econergy's obligation, which amounted to $352,308.59.  The arbitrator gave Deol 30 days to pay this amount.  If Deol failed to do so, the arbitrator ordered Deol to "immediately transfer to Goel the pledged security, i.e., [Deol's] shares in Econergy and the land on which the plant is located."  The arbitrator ruled that if the items were transferred to Goel, then Deol would be entitled to a credit to the extent the fair market value of the land and the shares exceeded Deol's obligation under his personal guarantee.  The arbitrator also appointed an accountant to perform an accounting regarding various issues, including whether Deol had improperly taken funds from Econergy and whether Goel Ventures had fully accounted for items that it had ordered for the solar plant.  A further hearing was set to determine whether Deol had performed his personal guarantee and for a status report from the accountant.

### 2. August 4, 2017 order requiring Deol's transfer of Econergy shares and Ludhiana land pursuant to loan guarantee

At an August 4, 2017 hearing with the arbitrator, Deol indicated that he would not be making the payment of $352,308.59 pursuant to his personal guarantee of Econergy's loan.  The arbitrator ordered Deol to transfer all his shares in Econergy and his interest in the Ludhiana land to Goel.  The arbitrator also ordered Deol to "preserve and protect the assets of Econergy" and to not make any expenditure from Econergy's funds "other than those essential for the ordinary conduct of business by Econergy."

### 3. August 16, 2017 injunctive order regarding Deol's violations of prior orders

Goel and Goel Ventures requested injunctive relief from the arbitrator based on Deol's alleged violation of the arbitrator's orders.  In an August 16, 2017 order after

4

hearing, the arbitrator determined that Deol (1) had failed to turn over his Econergy shares and (2) had pursued at least one legal action on behalf of Econergy in a court in India. In the legal action in India, Deol sought to relitigate matters that were previously resolved in arbitration. The arbitrator found that the litigation in India was "clearly . . . not part of the ordinary course of business of Econergy . . . ." The arbitrator ruled that the litigation in India, or any similar litigation, "would be in direct violation of" the arbitrator's prior award and order. The arbitrator ordered Deol to, among other things, (1) immediately cease pursuing any legal action purportedly on behalf of Econergy, and (2) immediately resign as director of Econergy pursuant to the arbitrator's prior award and order regarding Deol's forfeiture of Econergy shares. The arbitrator also appointed Goel as the sole director of Econergy. The arbitrator reserved for later resolution the issue of whether any claims by Deol in his individual capacity should be enjoined.

**4. Deol's request for modification of the arbitrator's August 4 and 16, 2017 orders**

In September 2017, Deol requested that the arbitrator modify the August 4, 2017 order, which required him to transfer land and Econergy shares, and the August 16, 2017 injunctive orders, which found him in violation of prior orders. Regarding the August 4 order to transfer land and Econergy shares, Deol contended that, based on Code of Civil Procedure section 726[1] and California Uniform Commercial Code sections 9401 and 9604 and former section 9501, California law permitted sequential foreclosure on collateral, not simultaneous foreclosure as in this case. Deol argued that either the land or the shares alone were likely valued at more than the amount he owed. Regarding the August 16 injunctive orders, Deol contended that his legal action in India had been initiated prior to the arbitrator's orders, and therefore the August 16 order finding him in

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

5

violation of prior orders was erroneous as it was based on the arbitrator's mistaken belief that Deol had violated a previous order. Goel and Goel Ventures opposed Deol's motion for modification. After a hearing, the arbitrator denied Deol's motion.

### 5. February 20, 2018 rulings

#### a. *February 20, 2018 further injunctive orders*

In late 2017, Goel and Goel Ventures filed a motion in arbitration requesting additional injunctive relief based on Deol's failure to transfer his shares and land and his continued litigation in India. The arbitrator received briefing by the parties and held a hearing on the matter.

In a February 20, 2018 order, the arbitrator found that Deol had not transferred his Econergy shares and the Ludhiana land, that he continued to pursue legal actions on behalf of Econergy, and that he "continue[d] to pursue allegedly 'individual' legal claims that are, in reality, (a) claims made on behalf of Econergy, Inc., or (b) claims that Deol was required by the Co-Development Agreement and the Loan Agreement to pursue in this arbitration, and which claims already have been the subject of hearings and rulings in this arbitration." Based on Deol's conduct, the arbitrator ordered Deol to, among other things, promptly take all actions needed to ensure the transfer of the Ludhiana land to Goel and to allow Goel to have complete control over the solar power plant. The arbitrator also ordered Deol, anyone "acting . . . on his behalf," and anyone "acting in concert or participating with [him]" to immediately cease from pursuing any legal action "whether on behalf of Econergy Inc. or on Deol's own individual behalf, involving the affairs of Econergy, Inc., including the planning, development, and operation of Econergy's Ludhiana solar power plant."

**b.** *February 20, 2018 further partial award determining value of Deol's interest in Econergy and value of Ludhiana land*

Further hearings were held to determine the value of Deol's 51 percent shareholder interest in Econergy and the value of his Ludhiana land. The parties submitted reports, documents, and briefs regarding the value of the two items.

In a February 20, 2018 "further partial final award," the arbitrator found the value of Deol's shareholder interest was $634,600 and the value of his Ludhiana land was $342,000. (Capitalization omitted.) The arbitrator ruled that after Deol transferred these items to Goel, the amount of $352,308.59 would be deducted from the balance that Econergy owed Goel under the loan agreement and Deol would be deemed to have satisfied his personal guarantee under the loan agreement. In addition, Deol would be entitled to a credit of $624,291.41, which was the amount by which the combined value of the two transferred items exceeded the amount of his personal guarantee. This credit would be applied to any financial obligations that may be imposed on Deol individually in the arbitration. Any remaining credit thereafter would be paid by Goel to Deol.

**6. April 2018 further partial award regarding remaining issues other than fees and costs**

The arbitrator held a further hearing on all remaining issues, other than regarding attorney's fees, costs, and interest. In an April 30, 2018 "further partial final award" (capitalization omitted), which incorporated all prior partial awards and orders, the arbitrator ordered the parties to pay various amounts, including $624,291.41 from Goel to Deol for the excess value of the land and corporate shares that Goel received under Deol's personal guarantee. The arbitrator also determined that Deol "ha[d] not fully complied" with the prior orders requiring him to turn over his Econergy shares and the Ludhiana land and to refrain from collaterally attacking the rulings by way of legal action in India. The arbitrator stated that "[e]nforcement through the courts appears needed." Regarding judicial enforcement, the arbitrator stated: "As the remaining matters in this

7

arbitration involve only attorneys' fees, costs, and interest . . . , and as Deol's non-compliance with the orders and awards herein appears on-going, it is the intention of the [arbitrator] that all orders and awards issued to date in this matter, as now incorporated into this Further Partial Final Award, be subject to proceedings under Code of Civil Procedure § 1285 at this time. [Citation.]"

### 7. November 2018 final award

The parties provided briefing regarding attorney's fees, costs, and interest, and those matters were submitted for decision to the arbitrator in mid-June 2018. Shortly thereafter, Deol filed for bankruptcy, and the arbitration was automatically stayed as a result. Subsequently, the bankruptcy court partially lifted the stay on the arbitration.[2]

In a November 16, 2018 order, the arbitrator ruled on attorney's fees, costs, and interest.

That same day, on November 16, 2018, the arbitrator issued a "final award," which incorporated the prior awards and orders issued in the arbitration, as well as the most recent order regarding attorney's fees, costs, and interest. (Capitalization omitted.) The monetary award included the following provisions: (1) $690,716 plus interest to Goel for breach of the loan agreement by Econergy; (2) upon Deol's transfer of his Econergy shares and Ludhiana land to Goel pursuant to the loan guarantee, Econergy's loan balance to Goel would be reduced by $352,308.59; and (3) Deol was awarded $624,291.41 against Goel for the excess value of the two transferred items. The arbitrator also awarded money to Goel Ventures for dividends that Deol wrongfully withheld, money to Deol for rent Econergy owed for use of the Ludhiana land, money to

---

[2] Deol has filed an unopposed request for judicial notice of (1) his bankruptcy petition that was filed in the bankruptcy court in June 2018, and (2) the bankruptcy court's September 6, 2019 order, which indicates that Deol's appeal pending in our court "is not affected by the bankruptcy automatic stay retroactive to the date of the notice of appeal." We grant Deol's request for judicial notice of these two documents. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

8

Econergy for a balance due from Deol on Econergy's second capital call, and money to Econergy for interest Deol had received on Econergy's deposits. The final award included a permanent injunction, which among other things required the following: (1) Deol to transfer all his Econergy shares to Goel, (2) Deol to transfer the Ludhiana land to Goel, and (3) Deol to cease from pursuing any legal action "whether on behalf of Econergy Inc. or on behalf of Deol's individual interests, involving the affairs of Econergy, Inc., including the planning, development, and operation of Econergy's Ludhiana solar power plant."

### E. *The Trial Court Proceedings*

#### 1. Goel's civil complaint for injunctive relief

In the meantime, while the arbitration proceedings were ongoing, a civil complaint for injunctive relief was filed in the trial court in August 2017, by Goel, Goel Ventures, and Econergy. These parties sought to require Deol's resignation as director of Econergy and to enjoin Deol from pursuing any legal action in India purportedly on behalf of Econergy. On September 11, 2017, the trial court ordered that, during the pendency of the civil action, Deol was "enjoined and restrained from" (1) interfering with any actions taken by Goel on behalf of Econergy in his capacity as the sole director of Econergy and (2) pursuing any legal action purportedly on behalf of Econergy.

#### 2. Deol's motions to vacate the February 2018 partial arbitration award and injunctive orders

In March and/or April 2018, while the arbitration proceeding was still ongoing, Deol filed in the trial court (1) a motion to vacate the February 20, 2018 partial arbitration award, which had determined the value of the Ludhiana land, and (2) a motion to vacate the February 20, 2018 further injunctive orders. In the first motion, Deol contended that the partial award concerning the value of the Ludhiana land should be vacated or corrected because it violated California foreclosure laws and was contrary to public policy. In the second motion, he contended that the order granting injunctive relief

9

should be vacated or corrected because the injunctive relief was contrary to law and exceeded the scope of the arbitration.  Deol's motions were based on the following contentions:

First, Deol contended that the arbitrator erred by ordering the transfer of both the Econergy shares and the Ludhiana land, when the Econergy shares alone would have satisfied Deol's obligation for the loan.  Based on Code of Civil Procedure section 726 and California Uniform Commercial Code section 9401, Deol argued that California law prohibited a lender from simultaneously foreclosing on all assets pledged as security.  Deol contended that California Uniform Commercial Code sections 9501(4) and 9604 required the valuation of the shares and the real property first, and then an order for a transfer that correlates to the outstanding loan amount.  Deol argued that the trial court had the authority to correct the arbitrator's ruling by limiting the transfer order to only his Econergy shares, which the arbitrator had already determined was worth more than the outstanding debt.

Second, Deol contended that the arbitrator's ruling requiring the immediate transfer of his real property for $342,000 must be vacated because it was contrary to law and in excess of the arbitrator's authority.  In this regard, Deol argued that the loan agreement referred to his interest in the Ludhiana land as a " 'mortgage,' " and therefore California foreclosure laws applied, including sections 725a and 726.  In particular, a public auction must be held to determine the fair market value of the property.  According to Deol, his counsel repeatedly requested that the arbitrator follow California foreclosure laws because Goel was attempting to foreclose on the Ludhiana land as a security.  Deol also argued that California courts had no jurisdiction to direct the sale of property located outside of California, and therefore the arbitrator had no authority to order transfer of the land in India.  Deol further contended the transfer of the property was "impermissible under Indian law" because the arbitrator's valuation was "far below the government rate in India," which had valued the land at $2 million.

10

Third, Deol contended that the injunctive relief was overbroad and exceeded the scope of the arbitrator's powers. He argued that the parties' arbitration agreement was limited to disputes under the loan agreement, but that the ordered injunctive relief required arbitration of all of Deol's "individual claims 'involving the affairs of Econergy.' " Deol contended that "he ha[d] a right to assert viable individual claims on his behalf."

Goel, Goel Ventures, and Econergy opposed the motions to vacate. They contended that the California law governing mortgages and deeds of trust, as well as the California Uniform Commercial Code provisions cited by Goel, did not apply to the Ludhiana land located in India. Further, although Goel contended that California courts lack jurisdiction to direct the sale of property located outside of California, the parties in this case had a written agreement requiring arbitration of all disputes between them, and the arbitrator had the power to make an award involving real property located outside of California. In addition, no law in India mandated the minimum price at which real property may be sold, and therefore there was no restriction on Deol's ability to transfer the Ludhiana land. Regarding the injunctive orders, Goel contended that the arbitration provisions in the development agreement and the loan agreement encompassed any disputes between Deol and Goel relating to Econergy and the solar power plant, and therefore any such disputes could not be litigated in India. Further, some of the disputes alleged in Deol's legal action in India pertained to claims already determined in the arbitration, or were claims belonging to Econergy that Deol had no standing to litigate.

In reply, Deol contended that the parties expressly agreed that California law governed the adjudication of any dispute submitted to arbitration, and therefore California law applied to the property located in India. Regarding injunctive orders, Deol contended that he "has stopped acting on behalf of Econergy long ago," the "Econergy bank accounts are controlled by" Goel, and Goel "is in full control of the plant." He argued that the injunctive orders were overbroad and exceeded the scope of the

11

arbitrator's authority because the injunctive orders cover, for example, claims he might have against third parties that relate to the business of Econergy but that do not arise under the development agreement or loan agreement.

After a hearing, the trial court filed a written order denying both of Deol's motions to vacate because "[he] had not demonstrated a ground under [section] 1286.2."

### 3. Goel's motion to confirm the November 2018 final arbitration award

Goel and Goel Ventures filed a motion to confirm the November 2018 final arbitration award, which addressed all issues in the arbitration, including attorney's fees, costs, and interest. The motion was unopposed. In January 2019, the trial court granted the motion, and a judgment was entered confirming the final arbitration award. Deol filed a notice of appeal from the judgment.

## III. DISCUSSION

Deol contends that the arbitrator exceeded his powers by failing to follow the laws of California and India and by ordering overbroad injunctive relief, and therefore the arbitration award must be vacated or corrected as to certain relief. Second, Deol argues that the trial court judgment does not conform to the final arbitration award with respect to certain relief, and therefore the judgment must be corrected. Third, he contends that the injunctive relief in the judgment is void, based on the bankruptcy stay that was in place after he filed for bankruptcy. Before considering Deol's contentions, we first set forth general legal principles regarding contractual arbitration.

### A. *General Legal Principles Regarding Arbitration*

"After arbitration has resulted in an award, the [California] Arbitration Act [(§ 1280 et seq.)] permits a party to petition 'the court to confirm, correct or vacate the award.' (§ 1285.) The opposing party may respond to such a petition by requesting 'the court to dismiss the petition or to confirm, correct or vacate the award.' (§ 1285.2; . . .) . . . A court presented with such a petition or response is empowered only to confirm, correct, or vacate the award or to dismiss the proceeding. (§ 1286.) If

12

the court confirms the award, it shall enter judgment accordingly. (§ 1287.4.)" (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1220 (*Toal*).)

" ' "[A]rbitration awards are generally immune from judicial review." ' [Citation.]" (*Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 534, fn. omitted (*Berglund*).) Courts in general may not review the merits of the dispute, the sufficiency of the evidence, or the reasoning in support of the arbitrator's decision. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*).) "[P]arties to an arbitration agreement accept the risk of arbitrator errors [citation], and arbitrator decisions cannot be judicially reviewed for errors of fact or law even if the error is apparent and causes substantial injustice [citations]." (*Berglund*, *supra*, at p. 534.) "This is true even where . . . an arbitration agreement requires an arbitrator to rule on the basis of relevant law . . . ." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.)

Judicial review of an arbitration award is limited to the grounds set forth in sections 1286.2 (to vacate) and 1286.6 (for correction). (*Moncharsh, supra*, 3 Cal.4th at p. 33.) An arbitration award may be vacated or corrected by a court if "[t]he arbitrators exceeded their powers." (§§ 1286.2, subd. (a)(4), 1286.6, subd. (b).)

**B.** *Whether the Arbitrator Exceeded His Powers*

Deol contends that the arbitrator exceeded his powers by (1) ordering Deol to transfer the Ludhiana land and Econergy shares in violation of California's foreclosure laws, (2) ordering the transfer of the Ludhiana land in violation of the law of India, and (3) imposing overbroad injunctive relief. Deol argues that the arbitration award must be vacated or corrected as a result.

We determine that these issues are not properly before this court. While Deol contends that the arbitrator exceeded his powers, this court reviews de novo the *trial court's* judgment or order, not the arbitration award. (See *Toal*, *supra*, 178 Cal.App.4th at p. 1217 [in an " 'appeal from an order confirming an arbitration award, we review the

13

trial court's order (not the arbitration award) under a de novo standard' "]; accord, *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 (*Advanced Micro Devices*).)  Further, "[a] judgment or order of a lower court is presumed to be correct on appeal . . . ."  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)  To succeed on appeal, the appellant, Deol, has the burden of showing reversible error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.)

In this case, Deol appealed from the judgment confirming the arbitration award. The judgment was entered after the trial court granted a motion by Goel and Goel Ventures to confirm the November 2018 final arbitration award.  Deol did not oppose the motion.  Given that Deol did not file any opposition, and in view of his failure in this court to articulate any defects in the motion, Deol fails to meet his burden as appellant to show error in the trial court's granting of the motion to confirm the arbitration award.

Where, as here, a party appeals from a judgment confirming an arbitration award, we may review an underlying order denying a petition to vacate an arbitration award. (*Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1454; accord, *Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 766.)  In this regard, Deol filed two motions to vacate in the trial court:  (1) a motion to vacate the February 2018 partial arbitration award, which determined the value of the Ludhiana land, and (2) a motion to vacate the February 2018 further injunctive orders.  The trial court denied both motions on the ground that Deol "had not demonstrated a ground under [section] 1286.2."  We review de novo a trial court's order denying a request to vacate an arbitration award.  (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1198.)

As we have explained above, a party to an arbitration "may petition the court to confirm, correct or vacate the award."  (§ 1285; see *Toal*, *supra*, 178 Cal.App.4th at p. 1220.)  An "award" under the California Arbitration Act "shall include a determination

14

of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." (§ 1283.4.)

The issue here is whether either of the two February 20, 2018 rulings by the arbitrator that Deol sought to vacate in the trial court constituted an "award" within the meaning of section 1283.4. This issue is important because "[i]f a ruling constitutes an 'award,' the trial court . . . acquires jurisdiction to confirm, correct or vacate the award. [Citations.] The issuance of an 'award' is what passes the torch of jurisdiction from the arbitrator to the trial court." (*Lonky v. Patel* (2020) 51 Cal.App.5th 831, 843 (*Lonky*).) On the other hand, "a ruling that is *not* an 'award' " is *not* subject to confirmation, correction, or vacation by the trial court. (*Id.* at p. 844.)

A trial court has a "duty to assess for itself whether the ruling of the arbitrator at issue meets the statutory definition of an 'award.' [Citations.] That is because, as explained above, whether a ruling constitutes an 'award' is what confers jurisdiction upon trial courts [citation], and because the parties may not by their consent move the statutory boundaries of a court's jurisdiction [citations]." (*Lonky*, *supra*, 51 Cal.App.5th at p. 844; see *Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1131 (*Kaiser*) ["failure of the partial final award to qualify as an 'award' under section 1283.4 deprived the court of jurisdiction to confirm or vacate it"]; *Maplebear, Inc. v. Busick* (2018) 26 Cal.App.5th 394, 407 (*Maplebear*) ["parties to an arbitration agreement cannot confer jurisdiction on courts to review arbitrator's rulings by agreeing . . . to allow immediate review of some interim awards"]; *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 373 (*Cowan*) ["the act of a litigant cannot confer subject matter jurisdiction on the court"]; *Harrington v. Superior Court of County of Placer* (1924) 194 Cal. 185, 188 (*Harrington*) ["Jurisdiction of the subject matter cannot be given, enlarged or waived by the parties."].) In other words, if an arbitrator's ruling does not constitute an "award" under section 1283.4, a trial court lacks jurisdiction to hear a

15

party's petition to vacate the arbitrator's ruling, and dismissal of the party's petition "is the appropriate action." (*Maplebear*, *supra*, at p. 401; see *id.* at p. 407.)

Where, as here, an arbitrator issues a series of rulings during an arbitration, the trial court must determine which of those rulings constitutes the requisite award under section 1283.4 "by asking whether the ruling (a) determines all issues necessary to resolve the entire controversy and (b) leaves unaddressed only those issues incapable of resolution at that time because those issues are potential, conditional or contingent" or "otherwise 'could not have been determined' at the time of that ruling. [Citations.]" (*Lonky*, *supra*, 51 Cal.App.5th at pp. 835, 845.)

In this case, Deol filed in the trial court motions to vacate (1) the February 2018 partial arbitration award and (2) the February 2018 further injunctive orders. However, neither of those February 2018 rulings by the arbitrator resolved the entire controversy between the parties. Other issues remained, and the arbitration proceeding was still ongoing when the arbitrator issued those February 2018 rulings. It was not until the issuance of the April 30, 2018 further partial award that the arbitrator rendered a decision on most of the remaining issues, other than the amount of attorney's fees, costs, and interest. Specifically, the April 30, 2018 further partial award addressed the following issues: (a) "[w]hat amount, if any, Goel owe[d] to Econergy for surplus steel and cables allegedly diverted to Goel's other Indian solar projects," (b) "[w]hether Deol [was] entitled to a credit against his obligations to Econergy for having paid, out of his personal funds, corporate expenses after January 1, 2012, and, if so, the amount of that credit," (c) "[t]he amount of deferred rent Deol [was] entitled to recover from Econergy," (d) "[t]he amount, if any, that Deol owe[d] to [Goel Ventures] as breach of contract damages resulting from Deol's non-performance of the land purchase option," (e) "[w]hat amount, if any, . . . Deol owe[d] to Econergy for interest he received on Econergy's . . . bank guarantees," (f) "[t]he amount Deol and/or Econergy should pay to Rajeev Ranjan and Niraj Mehta for work performed and for work-related expenses they incurred on

16

behalf of Econergy," (g) "[w]hat amounts, if any, Deol owe[d] to Econergy for misappropriated corporate funds after May 2013, and whether interest and sanctions on those sums would be ordered," (h) "[w]hich, if any, of the additional remedies requested by Goel and [Goel Ventures] . . . [were] warranted under . . . [the] facts," and (i) "[w]hich party or parties [were] deemed the prevailing parties in this arbitration and entitled to recover attorneys' fees and costs under the provisions of the Co-Development Agreement and the Loan Agreement." The arbitrator eventually issued a "final award" in November 2018, which addressed all issues, including attorney's fees, costs, and interest. (Capitalization omitted.)

In view of the later April 30, 2018 further partial award that contained the arbitrator's ruling on numerous additional issues between the parties, followed by a final award in November 2018, it is apparent that the arbitrator's earlier (1) February 2018 partial award and (2) February 2018 further injunctive orders, both of which Deol sought to vacate, did not individually or collectively "include a determination of all the questions submitted to the arbitrator[] the decision of which [was] necessary in order to determine the controversy." (§ 1283.4.) "The text of section 1283.4 is clear: It specifies that an award must resolve the parties' controversy, not a question within the controversy." (*Kaiser*, *supra*, 13 Cal.App.5th at p. 1146.) Because the two earlier February 2018 rulings by the arbitrator that Deol sought to vacate did not "determine[] all issues necessary to resolve the entire controversy" and did not "leave[] unaddressed only those issues incapable of resolution at that time" (*Lonky*, *supra*, 51 Cal.App.5th at p. 835; see *id.* at p. 845), those earlier February 2018 rulings did not constitute an "award" under section 1283.4.

As neither of the two February 2018 rulings by the arbitrator constituted an award under section 1283.4, the trial court in this case did not have jurisdiction to rule on Deol's motions to vacate them. (*Lonky*, *supra*, 51 Cal.App.5th at pp. 843-844; *Kaiser*, *supra*, 13 Cal.App.5th at p. 1131; *Maplebear*, *supra*, 26 Cal.App.5th at p. 407; see *Cowan*, *supra*,

17

14 Cal.4th at p. 373; *Harrington, supra*, 194 Cal. at p. 188.) If, as here, a trial court lacks jurisdiction to hear a petition to vacate, then the trial court's dismissal of the petition "is the appropriate action." (*Maplebear, supra*, at p. 401; see *id.* at p. 407.)

We are not persuaded by Deol's arguments to the contrary. First, Deol contends this case is analogous to *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415 (*Hightower*), in which an appellate court determined that the arbitrator's partial award was subject to confirmation by the trial court. (*Id.* at pp. 1420, 1439.) In *Hightower*, the arbitrator determined that one party, Hightower, had breached a shareholders agreement, which prevented the other party, O'Dowd, from completing the purchase of Hightower's shares in a corporation that the parties had jointly formed. (*Id.* at pp. 1438, 1421.) Fashioning a remedy for this breach "was no simple matter," however, because (1) the financing that O'Dowd had previously arranged was no longer available and (2) "it was not at all clear that O'Dowd would be able, nearly two years later, to make a comparable deal." (*Id.* at p. 1438.) "The arbitrator determined that O'Dowd was entitled to a new opportunity to acquire Hightower's shares at the same price . . . . In order to make this opportunity meaningful, O'Dowd would necessarily have to be given a reasonable opportunity to obtain such new financing. To accomplish this, the arbitrator provided that O'Dowd would have the right, but not the obligation, to purchase, upon certain designated conditions, Hightower's shares within six months of the date of the confirmation of the award (which . . . the arbitrator designated as a Partial Final Award). [¶] Obviously, this option would be of no value to O'Dowd unless it were a firm and final right. Without assurance that O'Dowd's legal right to make the purchase was finally resolved, it would be difficult to obtain the new financing, and enforcement of the option rights would be subject to continuing uncertainty." (*Id.* at p. 1438, italics omitted.) Because an arbitration award is not enforceable as a judgment until it is confirmed, "[i]t was obviously for this reason that the arbitrator expressly provided that his 'Partial Final Award' would be subject to confirmation while, at the same time, he

18

reserved jurisdiction to make a final award settling all remaining issues not capable of resolution until *after* O'Dowd had exercised his option and completed the necessary preparations to complete the purchase of Hightower's shares. A number of actual and potential unresolved issues were described in the Partial Final Award." (*Id.* at p. 1439.) For example, the "Partial Final Award" specified that the arbitrator reserved jurisdiction to determine those "specific additional issues likely to arise after O'Dowd resubmitted his offer to purchase Hightower's shares," including (1) an award of O'Dowd's "costs that he would have to incur in order to obtain the new financing needed to make the purchase[, as] those costs were obviously unknown as of the date of the partial final award," and (2) "[i]f O'Dowd failed to tender the required consideration for Hightower's shares, then O'Dowd would nonetheless be entitled to an award of damages . . . which would have to be determined by the arbitrator and included in the 'final' award." (*Id.* at p. 1427-1428, italics omitted.)

The appellate court determined that, "[i]n the specific factual context of this case," it was proper for the "arbitrator, in order to provide a proper remedy for the prevailing party, [to] resolve certain critical areas of a dispute in a '*partial* final award' but reserve jurisdiction to later decide, by a '*final* award,' issues which will likely arise as a result of the implementation of that remedy." (*Hightower*, *supra*, 86 Cal.App.4th at p. 1419.) In this context, the appellate court found that "the arbitrator's 'partial final award' was procedurally proper and was confirmable *as such* by the [trial] court." (*Id.* at p. 1420.) The appellate court explained that under section 1283.4, the arbitrator had "not improperly left undecided issues 'necessary in order to determine the controversy.' Rather, he . . . determined all issues that [were] necessary to the resolution of the essential dispute arising from Hightower's breach. . . . Nothing remain[ed] to be resolved except those potential and conditional issues that necessarily could not have been determined . . . when the Partial Final Award was issued." (*Hightower*, *supra*, at p. 1439, fn. omitted.)

In contrast, in this case, at the time the arbitrator issued the orders that Deol sought to vacate in the trial court, that is, (1) the February 2018 partial arbitration award determining the value of the Ludhiana land and Econergy shares and (2) the February 2018 further injunctive orders, there were still "undecided issues 'necessary in order to determine the controversy' " in the arbitration proceeding. (*Hightower*, *supra*, 86 Cal.App.4th at p. 1439.) Unlike in *Hightower*, the undecided issues in this case were not issues "likely [to] arise *as a result of* the implementation of [any] remedy" in the February 2018 partial award or injunctive orders. (*Hightower*, *supra*, 86 Cal.App.4th at p. 1419, italics added.) Rather the undecided issues already existed based on events that had already occurred, and those issues were capable of being determined within the same arbitration proceeding. The undecided issues included (a) "[w]hat amount, if any, Goel owe[d] to Econergy for surplus steel and cables allegedly diverted to Goel's other Indian solar projects," (b) "[w]hether Deol [was] entitled to a credit against his obligations to Econergy for having paid, out of his personal funds, corporate expenses after January 1, 2012, and, if so, the amount of that credit," (c) "[t]he amount of deferred rent Deol [was] entitled to recover from Econergy," (d) "[t]he amount, if any, that Deol owe[d] to [Goel Ventures] as breach of contract damages resulting from Deol's non-performance of the land purchase option," (e) "[w]hat amount, if any, . . . Deol owe[d] to Econergy for interest he received on Econergy's . . . bank guarantees," (f) "[t]he amount Deol and/or Econergy should pay to Rajeev Ranjan and Niraj Mehta for work performed and for work-related expenses they incurred on behalf of Econergy," (g) "[w]hat amounts, if any, Deol owe[d] to Econergy for misappropriated corporate funds after May 2013, and whether interest and sanctions on those sums would be ordered," (h) "[w]hich, if any, of the additional remedies requested by Goel and [Goel Ventures] . . . [were] warranted under . . . [the] facts," and (i) "[w]hich party or parties [were] deemed the prevailing parties in this arbitration and entitled to recover attorneys' fees and costs under the provisions of the Co-Development Agreement and the Loan

20

Agreement." We disagree with Deol that these were "potential and conditional issues that necessarily could not have been determined . . . when the [February 2018 partial award and injunctive orders were] issued." (*Id*. at p.1439.) Instead, these were unresolved issues that *could* have been decided, but, as Goel explains, "were simply reserved for later resolution after further hearing and briefing."

Second, we are not persuaded by Deol's attempt to characterize the February 2018 partial award as resolving "the critical area of dispute" between the parties, while the April 2018 award addressed "only certain limited issues that related primarily to accountings" or were simply part of "a ' "true-up process." ' " The relevant test for determining whether an arbitrator's ruling is an "award" within the meaning of section 1283.4 is not whether critical versus limited issues have been decided, but "whether the ruling (a) determines all issues necessary to resolve the entire controversy and (b) leaves unaddressed only those issues incapable of resolution at that time because those issues are potential, conditional or contingent." (*Lonky*, *supra*, 51 Cal.App.5th at p. 835.) As we have explained, the February 2018 partial award and injunctive orders do not meet this test regarding resolution of "the entire controversy." (*Ibid.*; see § 1283.4.)

Third, Deol cites *EHM Productions, Inc. v. Starline Tours of Hollywood, Inc.* (2018) 21 Cal.App.5th 1058 (*EHM Productions*), in which an appellate court determined that a party, after an initial arbitration award had been affirmed by a JAMS appellate panel and confirmed by the trial court, could later seek confirmation of the JAMS appellate panel's award of costs for the JAMS appeal. (*Id.* at pp. 1060-1063 & fn. 2.) However, unlike in *EHM Productions*, arbitration appellate costs were not among the unresolved issues in this case at the time the arbitrator issued the February 2018 partial award and injunctive orders. Instead, as we have explained, numerous issues pertaining to the substantive claims between the parties still had to be determined, and were capable of being determined, by the arbitrator at the time of the issuance of the February 2018 partial award and injunctive orders.

21

Fourth, we understand Deol to argue that the trial court had jurisdiction to rule on his motions to vacate the February 2018 rulings because "[t]he trial court had discretion" to treat those motions to vacate the February 2018 rulings as instead a motion to vacate the later April 2018 partial award. According to Deol, (1) the later April 2018 partial award incorporated the earlier February 2018 rulings, (2) the later April 2018 partial award was issued while his motions to vacate the February 2018 rulings were pending, (3) the later April 2018 partial award constituted an "award" under section 1283.4, and (4) the trial court had a copy of the April 2018 partial award due to Goel providing a copy with his opposition to Deol's motions to vacate.

Assuming, without deciding, that the April 2018 partial award constituted an "award" under section 1283.4, we are not persuaded by Deol's argument. Under Deol's reasoning, he could have in theory successively challenged *each* of the arbitrator's seven separate partial awards and/or orders before the arbitrator issued the final award, so long as the final award incorporated all seven prior rulings. We decline to interpret section 1283.4's definition of an "award" in this manner. In this case, Deol's motions in the trial court expressly sought to vacate the *February 2018* partial award and injunctive orders. Subsequently, Goel brought a motion in the trial court to confirm the *November 2018* final award of the arbitrator. This procedural history shows the multiple "awards" for which the parties sought review by the trial court. However, limiting "award" status under section 1283.4 to "only . . . those rulings that resolve every part of the parties' controversy that can be resolved at that time furthers the underlying purpose of arbitration. Arbitration is designed to provide an ' "efficient, streamlined" ' mechanism for resolving disputes. [Citation.] Ensuring that trial court jurisdiction is reserved for only those arbitral rulings that effectively determine all issues presented for arbitration that are capable of determination at that time means that *parties may not seek seriatim judicial review of an arbitrator's interlocutory rulings*, which is critical because such piecemeal judicial intervention would slow down the dispute resolution process as

22

the parties bounce back and forth between the arbitral and judicial fora.  [Citations.]" (*Lonky*, *supra*, 51 Cal.App.5th at p. 845, italics added.)  We decline to take a broader interpretation of "award" in this case under section 1283.4 as suggested by Deol.

Fifth, Deol contends that, although he "did not specifically oppose [Goel's] motion to confirm the final award," the motion referred to Deol's prior unsuccessful motions to vacate the partial awards, and "there was no reason for Deol to burden the trial court by refiling the motions again as oppositions."  Deol argues that the trial court "had inherent authority at the time of confirming the award to reconsider its prior ruling in light of the final arbitration award."  Deol also contends that the matter has been fully briefed in this court and that the record is adequate to consider the underlying issue of whether the arbitrator exceeded his powers.

We find Deol's arguments unpersuasive.  As we stated above, this court reviews the trial court's rulings de novo, not the arbitrator's rulings.  (*Toal*, *supra*, 178 Cal.App.4th at p. 1217; accord, *Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 376, fn. 9.)  No error has been shown in the trial court's grant of the unopposed motion by Goel and Goel Ventures to confirm the November 2018 final award.  Further, no prejudicial error can be shown in the trial court's denial of Deol's motions to vacate the arbitrator's February 2018 rulings.  Regarding this ruling, the trial court did not have jurisdiction to rule on Deol's motions to vacate and should have dismissed the motions, and therefore Deol cannot establish prejudicial error in the trial court's denial of those motions.  (See *Kaiser*, *supra*, 13 Cal.App.5th at p. 1144 ["How a trial court disposes of a petition to confirm or vacate a putative award has no bearing on whether the award satisfies section 1283.4's strictures."].)

Having concluded that Deol's claims regarding the arbitrator exceeding his powers are not properly before this court, we turn to Deol's other claims on appeal.

23

**C.** *Whether the Judgment Must Be Corrected to Conform to the Final Arbitration Award*

The November 2018 final arbitration award includes monetary relief to Goel, including $690,716 plus interest from Econergy for the balance due under the loan agreement. The final arbitration award also requires Deol to transfer (1) all his shares in Econergy and (2) all his interest in the Ludhiana land to Goel. The final arbitration award states that "*once the land and shares are fully transferred to Goel, Econergy's loan balance to Goel . . . shall be reduced by $352,308.59, the amount that Deol will have paid Goel under his loan guarantee*." (Italics added.)

Deol contends that the above italicized language from the final arbitration award is not included in the trial court order confirming the award or in the judgment. He argues that the judgment should be corrected to include the language concerning the reduction in the loan balance because otherwise, Goel will receive a windfall by collecting both the full loan amount from Econergy and the 51 percent guaranteed by Deol.

Goel, Goel Ventures, and Econergy agree that the order confirming the final arbitration award and the judgment should be corrected. They propose that the following sentence be added to the order confirming the final arbitration award (at page 2, under the monetary relief section, in numbered paragraph 2) and to the corresponding paragraph in the judgment (at page 2, under the monetary relief section, in numbered paragraph 2[3]): "Once the Ludhiana land and Jaspal Deol's shares of stock in Econergy have been fully transferred by Jaspal Deol to Prabhakar Goel, Econergy's loan balance to Prabhakar Goel

---

[3] Goel, Goel Ventures, and Econergy indicate in their respondents' brief that the proposed language should be added to paragraph 2 in the monetary relief section in the order confirming the final arbitration award, and to the "corresponding Paragraph 1 of the Monetary Relief Section of the Judgment." It appears that this latter reference to paragraph 1 is a typographical error because the "corresponding" paragraph regarding the transfer of shares and land in the judgment is actually found in paragraph 2.

24

shall be reduced by $352,308.59, the amount that Jaspal Deol will have paid Prabhakar Goel under Jaspal Deol's loan guarantee."

Deol does not object to this proposed language in his reply brief on appeal. As the proposed language is consistent with the language in the final arbitration award, we will order the trial court's order confirming the final arbitration award and the judgment modified accordingly. (See § 1286 ["the court shall confirm the award as made"].)

**D.** *Whether the Injunctive Relief in the Judgment Is Void Due to the Bankruptcy Stay*

Deol contends that the bankruptcy court "explicitly refused to allow for any enforcement of the arbitration award in its limited order modifying the [bankruptcy] stay." He argues that "portions of the judgment ordering injunctive relief necessarily involve enforcement," however, "by directly ordering [him] to take certain actions," and that therefore "these portions of the judgment are void." For example, Deol contends that the judgment includes orders requiring him to transfer "Econergy shares and the Ludhiana land," " 'immediately resign' as Econergy's director," and "execute documents and make instructions to third parties to effectuate the transfers."

Goel, Goel Ventures, and Econergy contend that Deol failed to raise this issue in the trial court, and therefore he has forfeited the issue. They also argue that neither the bankruptcy automatic stay provisions nor the bankruptcy court's order rendered the injunctive relief void. Rather, enforcement of the injunctive relief is simply stayed at this point.[4]

---

[4] In connection with their argument, Goel, Goel Ventures, and Econergy request judicial notice of (1) a motion they filed in the bankruptcy court in March 2021, seeking limited relief from the automatic stay, and (2) the bankruptcy court's May 21, 2021 order. Deol opposes the request. We " 'decline' to judicially notice" the documents because the documents " 'ha[ve] no bearing on the limited legal question at hand.' [Citation.]" (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063.)

In reply, Deol contends that the issue of whether the judgment is void due to the bankruptcy stay may be raised at any time.

Assuming we may consider the issue, we determine that Deol fails to establish that the trial court's judgment is void.

As we have recited above, after the parties provided briefing to the arbitrator regarding attorney's fees, costs, and interest, those matters were submitted for decision to the arbitrator in mid-June 2018. Shortly thereafter, Deol filed for bankruptcy, and the arbitration was automatically stayed as a result.

On October 31, 2018, the bankruptcy court partially lifted the stay on the arbitration. The bankruptcy court's October 2018 order states in this regard:

"IT IS ORDERED that *the automatic stay provisions* of 11 U.S.C. § 362(a) *are modified* as applicable to Jaspal Deol ('Debtor') to allow Prabhakar Goel and Goel Family Partnership LP, its agents, representatives, and successors, and trustee under the trust deed, and any other beneficiary or trustee, and their respective agents and successors to conclude the arbitration before JAMS in San Jose in Case No. 1110016365 *to permit the Arbitrator to issue the ruling on the attorneys' fees, costs, and interest awarded for the arbitration, the issuance of the final arbitration award* []*based on the prior rulings and the additional rulings on attorneys' fees, costs, and interest, and Movant* [*(Prabhakar Goel and Goel Family Partnership LP)*] *obtaining confirmation of that final award under applicable law*.

"IT IS FURTHER ORDERED that the automatic stay is not modified with respect to the determination of any other issues by the Arbitrator, enforcement of the arbitration final award or any judgment based on the arbitration final award against the Debtor, the Chapter 13 Trustee, or property of the bankruptcy estate. *Any final judgment obtained by Movant shall be submitted to this court for the proper treatment of any claims arising under the Bankruptcy Code*." (Boldface omitted; italics added.)

26

Thereafter, on November 16, 2018, the arbitrator issued an order regarding attorney's fees, costs, and interest. That same day, on November 16, 2018, the arbitrator issued a final award. The final award expressly "incorporated" the "previous Orders and Awards issued" in the arbitration, "summarized" the "relief granted in those previous awards," and made that relief "part of this Final Award." Goel and Goel Ventures then filed a motion to confirm the November 2018 final arbitration award. In January 2019, the trial court granted the unopposed motion, and a judgment confirming the final arbitration award was entered.

In view of this procedural history, we are not persuaded by Deol's contention that certain portions of the judgment regarding injunctive relief are void. The bankruptcy court's October 2018 order expressly allowed (1) "the Arbitrator to issue the ruling on the attorneys' fees, costs, and interest awarded for the arbitration," (2) "the issuance of the final arbitration award []based on the prior rulings and the additional rulings on attorneys' fees, costs, and interest," (3) the "confirmation of that final award under applicable law," and (4) the "submi[ssion]" of the "final judgment . . . to [the bankruptcy] court for the proper treatment of any claims arising under the Bankruptcy Code." Here, the record reflects that the arbitrator, consistent with the bankruptcy court's order, (1) "issue[d] the ruling on the attorneys' fees, costs, and interest awarded for the arbitration" and (2) "issu[ed] . . . the final arbitration award []based on the prior rulings and the additional rulings on attorneys' fees, costs, and interest." The record further reflects that, consistent with the bankruptcy court's order, the trial court (3) ordered "confirmation of that final award under applicable law," and (4) filed a "final judgment." On this record, we are not persuaded by Deol's attempt to recast the injunctive relief contained *in* the final arbitration award, the order confirming the award, and the judgment as improper "enforcement of the arbitration award."

Accordingly, we determine that Deol fails to establish that the trial court's judgment is void.

## IV. DISPOSITION

The trial court's January 10, 2019 order confirming the final arbitration award is modified on page 2, under the monetary relief section, by adding the following sentence at the end of numbered paragraph 2:  "Once the Ludhiana land and Jaspal Deol's shares of stock in Econergy have been fully transferred by Jaspal Deol to Prabhakar Goel, Econergy's loan balance to Prabhakar Goel shall be reduced by $352,308.59, the amount that Jaspal Deol will have paid Prabhakar Goel under Jaspal Deol's loan guarantee."

The January 10, 2019 judgment is modified on page 2, under the monetary relief section, by adding the following sentence at the end of numbered paragraph 2:  "Once the Ludhiana land and Jaspal Deol's shares of stock in Econergy have been fully transferred by Jaspal Deol to Prabhakar Goel, Econergy's loan balance to Prabhakar Goel shall be reduced by $352,308.59, the amount that Jaspal Deol will have paid Prabhakar Goel under Jaspal Deol's loan guarantee."

As so modified, the judgment is affirmed.  The parties shall bear their own costs on appeal.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
WILSON, J.

*Econergy, Inc. v. Deol*
**H046723**