Filed 2/7/23 Kroenke Sports & Entertainment v. Salomon CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KROENKE SPORTS & ENTERTAINMENT, LLC et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> NICOLAS A. SALOMON, <br><br> Defendant and Appellant. | B320536 <br><br> (Los Angeles County Super. Ct. No. 18STCP02712, 19STCP00654) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge. Dismissed.

Fish & Richardson and Jeremy D. Anderson for Defendant and Appellant.

Wilson Sonsini Goodrich & Rosati, Susan K. Leader and Will A. Ostrander for Plaintiffs and Respondents.

# INTRODUCTION

Kroenke Sports & Entertainment, LLC and its affiliates, Outdoor Channel Holdings, Inc., SkyCam, LLC, and CableCam, LLC, (collectively, Kroenke) filed an arbitration demand against Nicolas Salomon, former president of SkyCam and CableCam, claiming he misappropriated confidential information. The arbitrator awarded Kroenke $440,126.48, plus interest, on its claims. In March 2019 the trial court entered judgment confirming the award. The arbitrator then issued a second award, dismissing Salomon's counterclaims against Kroenke. In March 2022 the court entered judgment confirming that award. Salomon appeals from the March 2022 judgment.

Salomon challenges the March 2019 judgment on the ground the trial court lacked authority to confirm the arbitrator's first award under Code of Civil Procedure section 1283.4.[1] He also challenges the March 2022 judgment, arguing the court should have vacated the arbitrator's second award because the arbitrator refused to hear evidence material to the case.

Because the March 2019 judgment was a final judgment from which Salomon did not timely appeal, we dismiss as untimely the portion of his appeal challenging that judgment. We dismiss the rest of Salomon's appeal as moot because, in a separate lawsuit in Delaware, he has obtained the relief sought by his counterclaims in the arbitration and therefore reversing the March 2022 judgment would provide him no effective relief.

---

[1]     Statutory references are to the Code of Civil Procedure.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Arbitrator Issues an Award, and the Trial Court*
     *Enters a Judgment*

In January 2018 Kroenke filed an arbitration demand against Salomon with Judicial Arbitration and Mediation Services, Inc. (JAMS).  Kroenke asserted breach of contract and other claims, based on allegations Salomon had misappropriated confidential information from SkyCam and CableCam before they terminated his employment as their president in 2014.  Kroenke filed the demand pursuant to a 2009 employment agreement with Salomon, which provided JAMS would administer arbitration between the parties.

In February 2018 Salomon filed a response to the demand that included a request to dismiss the proceeding for lack of jurisdiction.  Citing a 2011 employment agreement between the parties that provided the American Arbitration Association (AAA) would administer arbitration, Salomon argued AAA, not JAMS, had to conduct any arbitration between the parties. Salomon did not assert any counterclaims in his response to Kroenke's demand for arbitration, but "reserve[d] the right to assert . . . such Counterclaims as may be available to him" in the event his jurisdictional challenge did not succeed.

In a March 2018 email exchange with the arbitrator's case administrator, Salomon indicated he was without counsel in the arbitration and asserted Kroenke was obligated to provide him counsel under an "Indemnification Agreement" between the

3

parties.[2] Salomon wrote: "Can you please see if the arbitrator can address this lack of counsel issue? I would like to have counsel for the hearing."[3]

Later in March 2018, the arbitrator held a telephonic hearing on Salomon's jurisdictional challenge. Salomon participated without counsel and again claimed Kroenke was obligated to indemnify him in the arbitration proceeding. Kroenke argued that indemnification was "an issue to be resolved at the end of the case" and that Salomon's request for indemnification was "not ripe." The arbitrator told the parties "the issue of indemnification raised by Mr. Salomon was reserved and would be addressed at a later date" and urged Salomon to obtain counsel. The arbitrator issued a written order rejecting Salomon's jurisdictional challenge and ruling the "arbitration properly is a JAMS arbitration." The arbitrator observed that, at an earlier conference in the arbitration, he had ruled he would decide the jurisdictional issue before considering Kroenke's request for a temporary restraining order and preliminary injunction and Salomon's request for "a determination of a right to indemnification for his attorneys' fees in connection with this arbitration."

In May 2018 the arbitrator held a hearing on Kroenke's request for a temporary restraining order and preliminary injunction, after which the arbitrator issued a written ruling

---

[2] Salomon, however, was represented at that time by counsel in an action he had filed against Kroenke in the United States District Court for the Northern District of Texas.

[3] It is not clear what hearing Salomon was referring to.

granting the request. In his ruling the arbitrator stated that Salomon had participated in the hearing without counsel, that during the hearing the arbitrator advised him repeatedly to obtain counsel to represent him in the arbitration, and that during the hearing the arbitrator also stated Salomon's "repetition of a right to indemnification or the like is no reason or excuse for a stay or further delay of this arbitration." The arbitrator added that, after the hearing, Salomon submitted by email a request for a stay of any decision on Kroenke's "request for injunctive relief," which the arbitrator "denied or denied again—(A) because Mr. Salomon, . . . without specifics, said that he is close to retaining (unnamed) new counsel, but (again without specifics) is having difficulty because of 'who Claimants are,' and (B) he should not have to defend this arbitration unless and until Claimants are required to advance his legal fees."

In July 2018 the arbitrator held a hearing in Los Angeles on the merits of Kroenke's claims. Despite having agreed to the date and location of the hearing and having received notice of the hearing a month in advance, Salomon did not participate. At the hearing Kroenke presented extensive evidence in support of its claims.

On September 6, 2018 the arbitrator issued a "Partial Final Award" (the "first arbitration award"), awarding Kroenke $440,126.28, plus interest, on its claims. The award also provided: "This Partial Final Award does not cover Mr. Salomon's claim for indemnification, which shall remain reserved for future resolution—subject to the express condition that Mr. Salomon shall file and serve a counterclaim in this arbitration, within ten (10) days of the issuance of this Partial Final Award, setting forth his claim for indemnification,

including the basis or bases for that claim." The award further provided: "This Partial Final Award fully and finally determines all claims, remedies . . . and principal issues and contentions concerning Mr. Salomon's liability to Claimants in this arbitration. [¶] Except for Mr. Salomon's reserved claim for indemnification, all claims, issues and contentions which have not been granted—expressly or by necessary implication—in this Partial Final Award, are and shall be deemed denied."

On November 21, 2018, with Salomon not having filed or served any counterclaim in the arbitration, Kroenke filed a petition in Los Angeles County Superior Court to confirm the first arbitration award. Salomon, represented by attorneys S. Michael Kernan and R. Paul Katrinak, opposed the petition. The court granted the petition, and on March 25, 2019 it entered judgment confirming the first arbitration award. Salomon did not file a notice of appeal within 60 days of the clerk's serving him with notice of entry of the March 25, 2019 judgment.[4]

B. *The Arbitrator Issues a Second Award, Salomon Files a Petition To Vacate It, and the Trial Court Denies the Petition*

The day after the trial court entered its March 25, 2019 judgment, the arbitrator issued an order titled "Order of March 26, 2019." In it the arbitrator stated that "earlier this month . . . JAMS added [Kernan] and his law firm as Mr. Salomon's counsel in this arbitration." The arbitrator also stated that, despite the

---

[4] In July 2019 a state court in Texas granted a petition by Kroenke to domesticate the judgment for purposes of enforcement. Salomon asserts his appeal of that ruling is pending.

6

10-day deadline in the first arbitration award, Salomon still had not filed a counterclaim for indemnification in the arbitration. Nevertheless, "[a]s a last chance opportunity," the arbitrator stated he was giving Salomon another 10 days (from the date of the order) to file and serve a counterclaim.

On the (second) tenth day, Kernan, on Salomon's behalf, filed and served counterclaims in the arbitration for express indemnity, implied indemnity, equitable indemnity, and declaratory relief. Salomon alleged that, under the 2011 employment agreement and a separate 2011 "Indemnification Agreement," Kroenke "should have completely indemnified [him] in this action," but refused to do so. Salomon sought to recover "all damages" he had suffered "as a result of the initiation of this arbitration" and "full and complete indemnity of [him] by [Kroenke] in this arbitration."

Kroenke moved to dismiss the counterclaims, arguing it had no obligation to indemnify Salomon because he had engaged in "bad faith, intentional misconduct." Kroenke also disputed Salomon's suggestion it "had certain obligations to him that arose prior to the final disposition of this matter" because "'an indemnity claim does not accrue until the underlying action is resolved.'" Kroenke acknowledged that the 2011 Indemnification Agreement—specifically, a provision Salomon and the arbitrator referred to as "section 7"—provided Kroenke would "pay the expenses incurred by Indemnitee in defending any proceeding in advance of its final disposition, provided that, to the extent required by law, the payment of expenses in advance . . . shall be made only upon receipt of an undertaking." Kroenke argued, however, Salomon "repeatedly refused to provide an undertaking[

7

] and indeed acknowledges in his Counter-Claim that none was provided."

After Kroenke filed its motion to dismiss the counterclaims, Kernan withdrew as counsel for Salomon. Salomon, representing himself, filed an opposition to the motion, attaching numerous exhibits. He argued he was entitled both to indemnification and to "advancement for legal fees to defend himself," the latter "without provision of an undertaking."

The day before the scheduled hearing on Kroenke's motion to dismiss his counterclaims, Salomon engaged new counsel, Jeremy Anderson, who immediately wrote the arbitrator to request a one-week continuance of the hearing. The arbitrator granted the request, on the condition Salomon and Anderson not do anything to "stay, delay, obstruct, or impede" the resolution of Kroenke's motion to dismiss. The arbitrator prohibited all parties from filing any additional briefing, evidence, or written submissions relating to the pending motion.

On August 5, 2019, one day before the rescheduled hearing on Kroenke's motion to dismiss Salomon's counterclaims, Anderson sent counsel for Kroenke an email that attached an "Undertaking for Advancement of Fees and Expenses," signed and dated that day by Salomon. This document stated that, "[s]ubject to the terms of" section 7 of the 2011 Indemnification Agreement, Salomon was undertaking to repay Kroenke all attorneys' fees and expenses paid by Kroenke on Salomon's behalf in advance of the final disposition of the arbitration proceeding, in the event it was ultimately determined Salomon was not entitled to indemnification. Anderson also sent the arbitrator a copy of this email, including the attached undertaking by Salomon.

The following day Anderson appeared for Salomon at the hearing on Kroenke's motion to dismiss Salomon's counterclaims. Conceding the counterclaims for indemnification lacked merit, Anderson focused on Salomon's request for advancement of his attorneys' fees and costs. He argued the undertaking Salomon had provided entitled him to the advancement under section 7 of the 2011 Indemnification Agreement.

In September 2019 the arbitrator issued (and amended in no relevant respect) a "Partial Final Award No. 2" (the "second arbitration award"). In it the arbitrator dismissed with prejudice Salomon's counterclaims for indemnification on the ground Salomon had "conceded or, at a minimum, failed to sustain any entitlement to any form of indemnification." Construing Salomon's request for advancement of attorneys' fees under section 7 of the 2011 Indemnification Agreement as a separate counterclaim, the arbitrator ruled Salomon had "failed to sustain any entitlement to Section 7 advancement . . . ." This ruling rested on the arbitrator's determination that under Delaware law, which the parties agreed applied, the undertaking Salomon had provided was not valid because he knew, when he provided it, he could not "meet his contingent performance obligation to repay" the advanced fees.[5] The arbitrator dismissed with prejudice Salomon's counterclaim "for Section 7 advancement of

[5] The arbitrator based this conclusion about Salomon's inability to repay the advanced fees on, among other things, (a) Salomon's filing in the United States Court of Appeals for the Fifth Circuit an "Indigent Financial Affidavit," dated August 3, 2019; (b) his recent statement to the arbitrator he was "consulting bankruptcy counsel"; and (c) the "more than $600,000" he already owed Kroenke as a result of, among other things, the earlier award on Kroenke's arbitration's claims.

expenses incurred, if any, to and including the date of issuance of this Partial Final Award" and dismissed without prejudice "any claim(s) . . . for Section 7 advancement of expenses incurred or to be incurred after Mr. Salomon provides [a] valid and enforceable Section 7 undertaking."

In January 2020 Salomon (from then on represented by counsel) filed a petition in Los Angeles County Superior Court to vacate the second arbitration award. Salomon argued the court should vacate the award because the arbitrator refused to hear evidence material to the controversy, including when, in granting the one-week continuance of the hearing on Kroenke's motion to dismiss Salomon's counterclaims, the arbitrator prohibited the parties from submitting further briefing or evidence relating to the motion. Salomon argued that, had the arbitrator allowed him to submit additional "legal and factual evidence," he "would have been able to demonstrate [his] right to advance indemnification." Kroenke opposed the petition to vacate the award, arguing that Salomon had sufficient opportunity to present his counterclaims in the arbitration and that the arbitrator did not improperly refuse to hear evidence. On July 7, 2020 the trial court denied Salomon's petition to vacate the second arbitration award.

C.    *Meanwhile, in Delaware . . .*

In October 2019—i.e., after the arbitrator issued the second arbitration award, but before Salomon filed his petition to vacate it—Salomon filed a "Verified Complaint for Advancement of Legal Expenses and Attorneys' Fees" in the Delaware Court of Chancery. Salomon alleged in that action that, under the 2011 Indemnification Agreement, he was entitled to advancement of legal expenses incurred in connection with the arbitration

10

proceeding, including any appeal from judgments confirming the first or second arbitration awards, as well as expenses incurred in connection with the Delaware action.

In February 2020 the Delaware Court of Chancery granted summary judgment in favor of Salomon. Finding Salomon's August 5, 2019 undertaking sufficient under Delaware law, the court ordered Kroenke to advance Salomon attorneys' fees and other legal expenses incurred from August 5, 2019 in connection with the arbitration and the Delaware proceeding.

D.    *After We Dismiss an Earlier Appeal by Salomon, He Files This One*

On September 4, 2020 Salomon filed a notice of appeal, purporting to appeal from (1) the trial court's March 25, 2019 judgment, which he argued was "'not appealable [*sic*]' because it was interlocutory," and (2) the trial court's July 7, 2020 order denying his petition to vacate the second arbitration award. In March 2022 we dismissed the appeal on the ground Salomon had not timely appealed from an appealable order or judgment. (*Kroenke Sports & Entertainment, LLC v. Salomon* (Mar. 15, 2022, B307451) [order of dismissal] (*Kroenke I*).) Regarding Salomon's attempt to appeal from the March 25, 2019 judgment, we observed that, "if Salomon is right that the March 25, 2019 judgment is not appealable, he can't appeal from it. If, on the other hand, Salomon is wrong and the judgment is appealable, his appeal from it is untimely because, as he concedes, he filed his notice of appeal more than 60 days—indeed, more than a year and a half—after the court clerk served him with notice of entry of the judgment. [Citation.] Either way, Salomon's appeal from the March 25, 2019 judgment must be dismissed." (*Kroenke I*.)

11

Nor, we held, could Salomon appeal from the July 7, 2020 order denying his petition to vacate the second arbitration award, because an order denying a petition to vacate an arbitration award is not appealable, but is instead reviewable on appeal from a judgment confirming the award.  As we explained, quoting from *Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, at pages 8-9, ""once a petition to confirm, correct, or vacate is filed, the trial court has only four choices:  It may (1) confirm the award, (2) correct the award and confirm it as corrected, (3) vacate the award, or (4) dismiss the proceedings."'  [Citation.]  'If a trial court dismisses the petition, it results in an appealable order.  [Citation.]  If the trial court which does not dismiss the petition also does not correct or vacate an arbitration award, it *must* confirm the award.  Entry of judgment in conformity therewith is required [citation], resulting in an appealable judgment under . . . section 1294, subdivision (d).  Similarly, if the nondismissing trial court does not confirm the award (or confirm [i]t as corrected), the court must vacate it, resulting in an appealable order under . . . section 1294, subdivision (c).'"  We then observed:  "None of the parties here, including Salomon, asked the court to confirm the arbitrator's second award and enter judgment (although presumably Salomon still could, if he wanted to obtain a judgment against himself)."  (*Kroenke I*, *supra*.)

Which is what Salomon did next.  And on March 17, 2022 the trial court entered a judgment confirming the second arbitration award, from which Salomon (this time) timely appealed.

12

**DISCUSSION**

A.   *Salomon Cannot Challenge the March 25, 2019*
*Judgment Because It Was a Final Judgment from*
*Which He Did Not Timely Appeal*

Salomon argues the trial court lacked authority to enter its March 25, 2019 judgment confirming the first arbitration award because the latter was not an "award" under section 1283.4.[6] Salomon can no longer challenge the March 25, 2019 judgment, however, because it was a final judgment from which he did not timely appeal.

"A judgment is final, and therefore appealable, when it embodies 'the final determination of the rights of the parties in an action or proceeding' [citation]. A judgment constitutes the final determination of the parties' rights '"where no issue is left for future consideration except the fact of compliance or noncompliance with [its] terms . . . ."'" (*Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1138; see *ibid.* ["It is a judgment's substance, not its form or label, which determines whether it is final."].) If a judgment is final, and therefore appealable, "an aggrieved party must file a

---

[6]   Salomon argues the first arbitration award was not an award under section 1283.4 because it left his "advancement claims . . . undecided." (See § 1283.4 [an award must, among other things, "include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy"].) We do not decide whether the first arbitration award was an "award" within the meaning of section 1283.4 because, as we explain, Salomon may no longer obtain review of the March 25, 2019 judgment confirming that award.

13

timely appeal or forever lose the opportunity to obtain appellate review." (*Reyes v. Kruger* (2020) 55 Cal.App.5th 58, 67, italics and quotation marks omitted; see § 906 [reviewing court lacks authority "to review any decision or order from which an appeal might have been taken" but was not]; *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 967 ["If the ruling *is* appealable, the aggrieved party *must* appeal or the right to contest it is lost."].)

The March 25, 2019 judgment disposed of the only issue before the trial court: whether to grant Kroenke's petition to confirm the first arbitration award. (See *EHM Productions, Inc. v. Starline Tours of Hollywood, Inc.* (2018) 21 Cal.App.5th 1058, 1063 ["Once a petition to confirm an award is filed, the superior court must select one of only four courses of action: It may confirm the award, correct and confirm it, vacate it, or dismiss the petition."].) In granting the petition, the court decided that issue in favor of Kroenke, and no issue remained for the court to consider. The March 25, 2019 judgment was therefore final and appealable. And by failing to file a timely notice of appeal from that judgment (see Cal. Rules of Court, rule 8.104(a)(1)), Salomon lost his right to contest it.

Salomon argues that, because the arbitrator had not resolved all claims between the parties, the arbitration award was not a final award and that therefore the March 25, 2019 judgment was "interlocutory" and "not appealable." (See *Kirk v. Ratner* (2022) 74 Cal.App.5th 1052, 1064-1066; *Judge v. Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619, 633-636.) He relies on the provision in the first arbitration award stating the arbitrator "reserved decision on Salomon's counterclaim for advance indemnification." Which is true, as far as it goes. But the arbitrator did not reserve decision on Salomon's counterclaim

14

indefinitely.  Rather, the award conditioned that reservation on Salomon's filing and serving the counterclaim within the next 10 days, which Salomon did not do.  At that point (i.e., Day 11), Salomon's counterclaim was no longer reserved for decision, but came within the ambit of the award's provision that "all claims, issues and contentions which have not been granted . . . in this Partial Final Award[ ] are and shall be deemed denied."  Thus—and notwithstanding the arbitrator's eventual decision (on March 26, 2019) to give Salomon another chance to file a counterclaim—when the trial court entered judgment on March 25, 2019 confirming the award, Salomon had no counterclaim of any kind pending or reserved in the arbitration, the first arbitration award was final, and the trial court had jurisdiction to confirm it.  Because the March 25, 2019 judgment was a final and appealable judgment from which Salomon did not timely appeal, we dismiss that portion of his appeal that challenges it.

B.    *The Rest of Salomon's Appeal Is Moot*

Salomon next argues the trial court erred in not vacating the second arbitration award, specifically, in failing to conclude the arbitrator wrongly refused to hear evidence material to Salomon's claim for "advancement rights."  Had the arbitrator considered that evidence, Salomon argues, the arbitrator "would have understood that Salomon's undertaking was sufficient under Delaware law" and "reached the same correct conclusion that the Delaware Court of Chancery reached: that Salomon was entitled to advancement."  The Delaware Court of Chancery decision to which Salomon refers and in which he prevailed, however, renders this portion of his appeal moot.

"Appellate courts generally will not review matters that are moot.  'A case is moot when the decision of the reviewing court "can have no practical impact or provide the parties effectual relief.  [Citation.]"  [Citation.]  "When no effective relief can be granted, an appeal is moot and will be dismissed.""  (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 78; see *Calleros v. Rural Metro of San Diego, Inc.* (2020) 58 Cal.App.5th 660, 667 ["An appeal will be dismissed if a reversal would have no practical effect."]; *Noergaard v. Noergaard* (2020) 57 Cal.App.5th 841, 852 [""Generally, an appeal will be dismissed as 'moot' when, through no fault of respondent, the occurrence of an event renders it impossible for the appellate court to grant appellant any effective relief.""].)

Salomon does not dispute that, in its February 2020 ruling, the Delaware Court of Chancery gave him what he seeks in this action in connection with his arbitration counterclaim for "advancement rights": an order directing Kroenke to advance him legal expenses incurred from August 5, 2019 (i.e., the date of Salomon's undertaking), as provided by section 7 of the 2011 Indemnification Agreement.  Nor does Salomon dispute Kroenke has complied with the Delaware order or argue a California judgment would give him anything more than the Delaware order gives him.  Because Salomon has obtained the relief sought in his arbitration counterclaim for advancement of his legal expenses, a decision in his favor here would not provide him any effective relief or have any practical effect on this case.  Salomon has won this issue; he presents no reason he needs to win it again.

Salomon argues his appeal is not moot because the second arbitration award included supposedly "disparaging statements" about him—such as that his undertaking was "'not given in good

16

faith'" and was "'worthless'"—and he "has a right to have the record . . . corrected." But he cites no legal authority suggesting he has any such "right." He also argues his appeal is not moot because "correcting the record will expunge the reputational damage the arbitrator has caused, which will ultimately help Salomon's future employment prospects." But that proposed relief is too vague, abstract, and speculative to require a decision here on the merits. (See *Eye Dog Foundation v. State Bd. of Guide Dogs for Blind* (1967) 67 Cal.2d 536, 541 [a court's duty "'is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it"]; see also *In re Rashad D.* (2021) 63 Cal.App.5th 156, 164, fn. 5 [speculative arguments do not "justify appellate review of an otherwise moot case"].) Seeking to clear one's name or correct the record in a civil case, unlike a criminal case,[7] does not justify hearing an otherwise moot appeal. Because Salomon's appeal from the trial court's March 17, 2022 judgment confirming the second arbitration award is moot, we dismiss it.[8]

---

[7]     See, e.g., *People v. DeLeon* (2017) 3 Cal.5th 640, 646, fn. 2; *People v. Succop* (1967) 67 Cal.2d 785, 790; *People v. Delong* (2002) 101 Cal.App.4th 482, 484.

[8]     Courts have recognized "three discretionary exceptions to the rule that an appeal must be dismissed if no effective relief can be granted to an appellant: "'(1) when the case presents an issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material question remains

17

# DISPOSITION

The appeal is dismissed. Kroenke is to recover its costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.

---

for the court's determination [citation].”””  (*Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 88-89; accord, *Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 864.)  Salomon does not argue any of these exceptions applies here.